346 S.E.2d 47

**In Re the CUSTODY OF Heidi Ann COTTRILL, an Infant Female.**

**No. 17050.**

Supreme Court of Appeals of West Virginia.

July 3, 1986.

Alan Simms, Elizabeth, for appellant.

Ellen Douglass Dalton, Springfield, Va., for appellee.

PER CURIAM:

This is an appeal by Zella Cottrill and George Glen Cottrill from an order entered by the Circuit Court of Calhoun County on August 23, 1985, in a proceeding involving the custody of the Cottrills' infant granddaughter, Heidi Ann Cottrill. The circuit court ordered that the custody of Heidi Cottrill be vested in the infant's mother, Cheryl [Cottrill] Bosley, and that the child be removed from the actual physical custody of the appellants. On appeal the appellants argue that the trial court's conclusions were incorrect and that the trial court erred in transferring custody of the child to Cheryl Bosley. After examining the record, we believe that it shows that Cheryl Bosley implicitly surrendered custody of the child to the Cottrills and that, under the circumstances, the best interests of the child should determine who is awarded custody.

Heidi Cottrill was born in Ohio on October 21, 1975, to the appellants' son, Rick G. Cottrill, and to Cheryl Cottrill. During the first two years of her life both her grandmother and her mother cared for her. After her second birthday she lived with, and was solely supported by, the appellants, her paternal grandparents.

Heidi's parents were divorced shortly after her birth. The Ohio divorce order vested temporary custody of the child in her father, Rick Cottrill. Her mother, Cheryl, later married David Bosley, who committed suicide in April, 1984. Her father, Rick Cottrill, died in a motorcycle accident in June, 1984.

In 1982 the appellants moved with Heidi to West Virginia from Ohio. From that time they have lived on a 100–acre farm in Calhoun County, which is fully paid for.

Shortly after her second husband's death, Cheryl Bosley, in an *ex parte* proceeding in Ohio, moved that she be granted permanent custody of Heidi. The Ohio court granted her custody. She then instituted the present action in Calhoun County, West Virginia, where Heidi resided at the time of the Ohio proceeding, for custody of the child.

After conducting extensive hearings, the Circuit Court of Calhoun County ruled that Cheryl Bosley was entitled to custody of the child, "notwithstanding the fact that the mental, physical and moral welfare of this child would be promoted by awarding custody to the petitioners [her grandparents] and notwithstanding also the expressed preference of the child to remain at her present abode." The circuit court's conclusion was predicated on findings that Cheryl Bosley was a fit mother and that she had not abandoned the child.[1]

From the circuit's court order the appellants, the grandparents, now appeal.

This Court, in a number of decisions, has recognized that, in the absence of certain factors, a parent of an infant child has the natural right to the custody of that child. The rule, as more specifically followed by the Court, was recently reiterated in the syllabus of the case of *Ford v. Ford*, 172 W.Va. 25, 303 S.E.2d 253 (1983) as:

" 'A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her child will be recognized and enforced by the courts.' Syl. pt. 2, *Hammack v. Wise*, [158] W.Va. [343], 211 S.E.2d 118 (1975); Syllabus, *State ex rel. Kiger v. Hancock*, 153

1. The trial court also found that the permanent custody order entered by the Ohio court was obtained by subterfuge and was thus not entitled to full faith and credit. However, since the court also found that Cheryl Cottrill was entitled to custody of Heidi, the same conclusion that the Ohio court reached, but on other grounds, the circuit court's ruling on the Ohio order is not in issue in this case.

W.Va. 404, 168 S.E.2d 798 (1969); Syllabus, *Whiteman v. Robinson,* 145 W.Va. 685, 116 S.E.2d 691 (1960)." Syl. pt. 1, *Leach v. Bright,* [165] W.Va. [636], 270 S.E.2d 793 (1980).

While the Court has recognized this as a general rule, it has also stated:

> " 'When a parent, by agreement or otherwise, has transferred, relinquished or surrendered the custody of his or her child to a third person and subsequently demands the return of the child, the action of the court in determining whether the custody of the child shall remain in such third person or whether the child shall be returned to its parents depends upon which course will promote the welfare and best interest of the child; and the parent will not be permitted to reclaim the custody of the child unless the parent shows that such change of custody will materially promote the moral and physical welfare of the child.' Point 4, Syllabus, *State ex rel. Harmon v. Utterback,* [144] W.Va. [419] [108 S.E.2d 521]." Syllabus point 1, *Davis v. Hadox,* 145 W.Va. 233, 114 S.E.2d 468 (1960).

█ The Court believes that in the case presently under consideration there is substantial evidence that Cheryl Bosley relinquished custody of Heidi to the appellants, even though she did not abandon the child. *Davis v. Hadox, supra,* examines certain factors which point to a relinquishment of custody. In the *Davis* case the Court noted that the child, except for a few months shortly after its birth, had remained all its life in a third party's home. The third party indicated a willingness for the natural mother to visit the child and indicated that she was welcome to do so at any time. The mother, in spite of these circumstances, seldom made inquiries as to the welfare of the child and made no contribution toward the child's care or expenses. The child had lived with the third party for almost seven years. Under those circumstances, the Court concluded that the welfare of the child should be the determinate of the question of who should receive legal custody.

An examination of the case presently under consideration shows a pattern somewhat similar to that in *Davis v. Hadox.* Cheryl Bosley, after several months, left Heidi in the custody of the appellants. The facts indicate that she may have done so because of financial circumstances, but the same circumstances were present in the *Davis* case. The record shows that the appellants made no effort to conceal the whereabouts of Heidi from her natural mother and that they, in fact, welcomed and encouraged contact between Heidi and her natural mother. In spite of this, Cheryl Bosley made infrequent contact with the child. For an extended period after the institution of her divorce proceeding until Heidi's fourth birthday she made no contact at all, even though she was living only two or three miles from the appellants. After Heidi's fourth birthday there was an occasional visit. Before the appellants moved to West Virginia they notified Cheryl Bosley of their intentions, and Cheryl Bosley made no attempt to prevent Heidi from leaving with them. Thereafter the appellants visited Ohio relatives every few months. They took Heidi with them and took her to see Cheryl Bosley on such occasions. The record indicates that Cheryl Bosley wrote Heidi infrequently and did not contact her on her birthdays after she moved to West Virginia. The record also shows that Cheryl Bosley made no contribution toward Heidi's support. At the time of the first hearing in the case Heidi was almost nine years old. She had lived exclusively with the appellants for at least seven years.

Given the circumstances of the case: the fact that Heidi's whereabouts were known and the fact that Cheryl Bosley had an ample opportunity to contact her, to contribute to her life and welfare, and to proceed to procure her custody, and also the fact that Cheryl Bosley did none of these things in a meaningful way until many years had passed, this Court is of the opinion that Cheryl Bosley implicitly surrendered custody of Heidi to the appellants. In such situations, *Davis v. Hadox, supra,* indicates that the welfare and best inter-

ests of the child should be the determinant of who should receive her custody.

In view of the principles set forth in syllabus point 1 of *Davis v. Hadox, supra,* and the fact that the trial judge found that the best interests of Heidi would be promoted by leaving her in the custody of the appellants, this Court believes that the circuit court's judgment should be reversed, and this case should be remanded with directions that the circuit court award the appellants custody of the infant child.

For the reasons stated, the judgment of the Circuit Court of Calhoun County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.