*488 OPINION OF THE COURT
Vincent J. Reilly, Jr., J.
In this proceeding the petitioner, Mark V., a nonparent, seeks custody of an infant, Jason P., born March 21, 1984, from the respondent Gale P., the child’s natural father. The respondent has resisted the petition asserting that the petitioner has no standing to seek custody and has also sought an affirmative order of custody in his favor. A hearing was held to consider whether such extraordinary circumstances existed as would warrant the court to consider the issue of best interests of the child in this dispute.
Although tragic, the facts surrounding this controversy are relatively simple. The respondent married Jason P.’s mother, Linda P., in June of 1982. Their relationship was somewhat troubled and culminated in a final separation in August of 1983 some seven months before Jason’s birth. In May of 1985 the respondent and his wife divorced and she was given custody of the child subject to the respondent’s rights of visitation. Linda P., and the petitioner met in November of 1983 and began living together when Jason was three months old. In December of 1985 she gave birth to a second child, Stephen, whose father is the petitioner, Mark V. The petitioner, Linda P., Jason P. and Stephen V. lived together as a family unit from shortly after Jason’s birth until Linda P.’s death in an automobile accident on November 27, 1987. This relationship was also troubled and marked by separations. The respondent Gale P. provided support and visited somewhat irregularly until about a year before Linda P.’s death when the visitation became more frequent. Immediately following Linda P.’s death the respondent came and took the child from the petitioner. Weekly visitation between Jason and his brother and the petitioner continued for approximately one month and then the respondent became resistant to any contact between the petitioner and the child which prompted the filing of the petition before the court.
The court ordered psychological evaluations of the child, petitioner and respondent which revealed that both adults have a strong, loving and caring concern for this child and that the child has a strong, close and seemingly affectionate relationship with both adults. The testimony and psychological report also show that the child has a strong and caring relationship with his brother Stephen which the psychologist strongly urged to be maintained and continued.
*489 The perplexing problem this case presents to the court is created by the ruling of the Court of Appeals in Ronald FF. v Cindy GG. (70 NY2d 141). For what is a court to do where the proof supports a conclusion that there are extraordinary circumstances but custody should remain with the parent and the best interests of the child are promoted by the child’s continued contact with the nonparent and a sibling. In this case the application of the principle espoused in Ronald FF. v Cindy GG. (supra) places two infant sibling infants age 4 and IV2 at risk of never seeing or knowing each other because their respective natural fathers are hostile to one another. Children are not chattel and their right to continue to know their siblings must be considered to be coequal with a parent’s right to choose with whom his child associates.
This court recognizes that it is bound by the principles of Matter of Bennett v Jeffreys (40 NY2d 543). Although the testimony does not support a finding of unfitness, abandonment, surrender or persistent neglect which have been the traditional extraordinary circumstances upon which the courts have relied, the testimony does support by a preponderance of the evidence "other equivalent but rare extraordinary circumstances which * * * drastically affect the welfare of the child.” (Matter of Bennett v Jeffreys, supra, at 549.) These rare circumstances include the sudden, tragic and traumatic death of his mother; the existence of a younger sibling with whom he lived; the sudden and abrupt separation from that infant sibling; the psychological bonding which exists between the child and his brother and the petitioner; and the apparent reluctance of the biological parent to foster a continued relationship with the petitioner and consequently his biological brother. (See, Matter of Curry v Ashby, 129 AD2d 310.) The court would be remiss if it failed to comment that on various occasions during this proceeding the petitioner had to bring enforcement proceedings to insure the visitation rights given him under the temporary order of the court. The finding of reluctance is also based upon the respondent’s own testimony that he did not want the child, Jason, visiting with Mr. V. nor visiting his brother at Mr. V.’s home.
Turning now to the issue of best interests of the child the court has considered the relative fitness of the respective parties; the age of the child; the child’s desires insofar as they are determinable; the need for stability; the psychological *490 evaluations of the parties and the child and the recommendation of the Law Guardian. Although competing parties project distinct personalities and thus differing approaches to parenting the court cannot conclude that either is unfit to raise this child. Both demonstrate a loving and caring concern for the child which make them appropriately fit to raise the child. Although Mr. V.’s concentrated contact with the child was more recent than Mr. P.’s by virtue of Mr. V.’s relationship with Jason’s mother, neither party was consistent in his relationship with the child until recently. This child, age 4, had been living with Mr. P. for approximately five months at the time of the psychological evaluation and was seen to be well adjusted to his living situation and he expressed attachments and commitment to both competing parties. The Law Guardian in his report recommends placement of the child with the respondent. The most significant element of the proof is that neither of the parties have recognized the child’s need to have each, the natural father and Mr. V., maintain a role in his life. They apparently cannot agree also on the need of siblings, Jason and his brother, to maintain contact.
The court’s view of the preponderance of the evidence is that there are extraordinary circumstances which afford Mr. V. custodial standing and that the best interest of the child will be served by the respondent having primary custodial rights and granting Mr. V. secondary or subordinate custodial rights. Although the law does not favor joint custody if the parties are acrimonious and are unable to cooperate (Braiman v Braiman, 44 NY2d 584), this court in order to fashion a remedy in light of the unique and extraordinary facts of this case will grant the petitioner joint custody. This granting of joint custody is made solely for the purpose of insuring continued contact between the petitioner, his son Stephen and Jason P. and is not intended to give the petitioner any say with regard to the child’s day-to-day upbringing nor any authority as to the child’s education, religion, medical treatment or other similar care. (See, Trapp v Trapp, 136 AD2d 178.) The extension of a joint custody order is meant to avoid the ruling in Ronald FF. v Cindy GG. (supra), because its application in this case would not be in Jason P.’s best interest.
Accordingly and consistent with the limitations set forth in this decision Mark V. shall have joint custody of Jason P. with physical placement with him every third weekend beginning *491 May 12, 1989 from Friday at 5:00 p.m. until Sunday at 7:00 p.m. Additionally, he shall have physical custody for one week in July or August of each year and at such other times as the petitioner and respondent may agree. The attorney for the petitioner should submit an order consistent with this decision on notice to the respondent’s attorney and the Law Guardian.