388 S.E.2d 322

**Leonard Douglas HONAKER**

v.

**Robert A. BURNSIDE, Jr., Special Appointed Judge of Greenbrier County, West Virginia; and Bradley W. Tuckwiller.**

**No. 19372.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1989.

---

Winifred L. Bucy, Beckley, for Leonard Douglas Honaker.

Robert A. Burnside, Jr., Beckley, for Robert A. Burnside.

Robert B. King, Robert B. Allen, Charleston, for Bradley W. Tuckwiller.

WORKMAN, Justice:

This case is before this Court pursuant to petitioner's request for a writ of mandamus and/or prohibition. The petitioner, Leonard Douglas Honaker, seeks a writ to either require the circuit court to show cause why it should not be compelled to enter a "proper order" or to prohibit enforcement of the order of Robert A. Burnside, Jr., Special Circuit Judge of Greenbrier County, West Virginia. In such order, dated July 17, 1989, the circuit court ordered that custody of Elizabeth Honaker, petitioner's natural child, be fully restored to him after a six-month transition period. Custody of such child had been in her stepfather, respondent Bradley Tuckwiller. By order entered September 19, 1989, the circuit court granted the respondent a stay of execution of such order during the time period necessary for respondent to file a petition for appeal before this Court. The respondent stepfather filed a motion on November 6, 1989, praying that this Court grant an appeal to the orders of the circuit court. We find that the July 17 and Sep-

tember 19, 1989, orders of the circuit court were proper and that the six-month transition period is in the best interests of Elizabeth. However, we remand this case to the circuit court with directions that the circuit judge formulate a specific plan for transition to the natural father that will serve to alleviate any unnecessary trauma to the child, and to establish reasonable visitation rights with the stepfather and half-sibling.

This case involves the custody of a six-year-old girl, Elizabeth Honaker. Elizabeth is the daughter of Leonard Douglas Honaker and Patricia Honaker Tuckwiller. The petitioner and Patricia Honaker Tuckwiller were divorced on November 29, 1984, and pursuant to such divorce order, custody of Elizabeth, who was just over one-year-old at that time, was granted to her mother subject to reasonable visitation by the petitioner.

Subsequent to the divorce, Patricia Honaker married the respondent, Bradley Tuckwiller, on February 14, 1985. They had one child together, Kinder Tuckwiller, who is now three years old. During this marriage, Elizabeth lived with her mother, stepfather and half-brother. These familial surroundings are the only ones she has ever known, and it is undisputed that she has developed a close and loving relationship with her stepfather. The petitioner continued involvement with his daughter subsequent to the divorce and during the remarriage of Patricia Tuckwiller to the respondent. He maintained a relationship with Elizabeth by way of utilizing his visitation rights, by giving her gifts and by making support payments.[1] There is no contention that he is unfit or that he in any way abandoned his parental rights or responsibilities.

Patricia Honaker Tuckwiller was tragically killed in an automobile accident on November 10, 1988. Pursuant to her Last Will and Testament, her husband Bradley Tuckwiller was named as guardian of her two children,[2] and he was later qualified as such. The petitioner filed a Petition for Writ of Habeas Corpus in Greenbrier County on March 23, 1989, attempting to gain custody of his daughter.[3] In the July 17 order the court provided for a transition period in an attempt to lessen the trauma to Elizabeth of such a dramatic change in her life on the heels of the loss of her mother. The court urged the parties through counsel to agree on a transition schedule, but when they were unable to do so, a provision was included within the order granting a stay of execution that the natural father was to have visitation rights with Elizabeth every other weekend during the duration of the stay.

The petitioner asserts that an unoffending natural parent should be entitled to custody of his or her child if such parent has not abandoned such child nor has in any manner been proven unfit. In his petition for writ of mandamus and/or prohibition, the petitioner maintains that he is entitled to immediate custody of Elizabeth and that the six-month transition period ordered by the judge was arbitrary and capricious. We affirm the trial court's determination that custody should be granted to the petitioner with a six-month transition period for transfer of such custody.

Significant to any decision involving custody of an infant child is a determination as to the best interests of such child. "The controlling principle in every such case is the welfare of the child and this Court has

---

1. Respondent contends that petitioner's visits with Elizabeth were sporadic, that support payments were frequently late, and that they stopped entirely after Mrs. Tuckwiller's death. Petitioner denies he was remiss in fulfilling any of his parental rights and responsibilities.

2. West Virginia Code § 44–10–1 (1931) provides that "[e]very father or mother, may, by last will and testament, appoint a guardian for his or her child, ... Where both father and mother have so appointed guardians, only that guardian who is the appointee of the parent last living shall be

entitled to the custody of the person of such child." Patricia also provided that in the event Bradley Tuckwiller should predecease her or they should die in a simultaneous death, her sister was to be the guardian of her two children.

3. After Mrs. Tuckwiller's death, until court action was initiated the parties apparently were reasonably amicable with one another, with the natural father having visitation with Elizabeth every weekend by informal agreement.

repeatedly said that in a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 405, 168 S.E.2d 798, 799 (1969).

The respondent stepfather offered in evidence the expert opinion from Dr. Jeffrey Harlow, a psychologist who examined Elizabeth and Kinder. Dr. Harlow concluded under all the circumstances that it was in both Elizabeth's and Kinder's [4] best interests to stay in the custody of the respondent. Dr. Harlow based his conclusions on the fact that he had observed both Elizabeth and Kinder, and had concluded by talking with them that there would be added trauma in their lives if the home life they have always known was altered in any further significant way at the present time.

Although the welfare of the child is of immeasurable importance, another important principle which must be considered is that of a natural parent's right to raise his or her own child. "The right of a parent to the custody of his or her child is based on natural law and arises because the child is his or hers to care for and rear, ..." *State ex rel. Harmon v. Utterback*, 144 W.Va. 419, 426, 108 S.E.2d 521, 526 (1959). Although the polar star concept is adhered to by this Court in child custody cases, we have "refused to apply it in cases where the parents have not abandoned the child or have in no manner been proved to be unfit to have the care and custody of such child." *Hammack v. Wise*, 158 W.Va. 343, 347, 211 S.E.2d 118, 121 (1975). This concept "will not be invoked to deprive an unoffending parent of his natural right to the custody of his child." *Hammack*, 158 W.Va. at 347, 211 S.E.2d at 121.

There may be situations where the welfare of the child and the natural rights of the parent are in conflict. But, "there is a strong presumption that the welfare of the child is well protected when he is in the custody of an unoffending natural parent." *Id.* We would not be at all reluctant to alter a natural parent's right to custody of his or her own child upon proof that such parent is unfit or had abandoned his parental rights or responsibilities.[5] There is no such showing of unfitness or abandonment in this case. In his motion seeking an appeal of the circuit court's ruling, the stepfather alleges neither unfitness nor abandonment, but seeks to rely solely on the contention that the best interests of the child should be the only consideration, and that they would be served by continued custody in him.

■ We therefore hold fast to the well-established precedent that

[a] parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syl.Pt., *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960).

■ There being no showing of unfitness or abandonment before us, we find that the circuit court did not err in restoring the custody of Elizabeth to her natural father, Leonard Honaker. To deny him such custody "would permit any person who obtains possession of a child and forms an attachment for it to take and keep permanently the child of any worthy parent...." *Whiteman*, 145 W.Va. at 696,

---

4. Respondent also contends that Kinder has a right to continue to reside with his sister, although the trial court denied Kinder's motion to intervene in the proceedings below.

5. *In re Livesay*, 178 W.Va. 739, 364 S.E.2d 267 (1987) (temporary custody granted to aunt and uncle based on evidence of mother's long voluntary absences and previous attempts to relinquish custody); *In re Custody of Cottrill*, 176

W.Va. 529, 346 S.E.2d 47 (1986) (custody of nine-year-old girl granted to grandparents due to fact that mother had relinquished custody to the grandparents several years prior); *Thomas v. Thomas*, 174 W.Va. 387, 327 S.E.2d 149 (1985) (transfer of custody from mother to father warranted based on evidence that mother's boyfriend was involved in child abuse and used drugs).

116 S.E.2d at 697. Although we recognize the attachment and secure relationship between Elizabeth and her stepfather, Bradley Tuckwiller, as well as the strong bond between Elizabeth and Kinder, such bond cannot alter the otherwise secure natural rights of a parent. "The law does not recognize and this Court will not sanction any relationship which produces mutual affection between a child and its temporary custodian and which leads to the annulment of a suitable parent's natural right to the care, custody and control of his child." *Id.*

We must also consider, however, what will be in the best interests of Elizabeth with regard to a continued relationship with her stepfather and half-brother Kinder. Undoubtedly, Elizabeth's best interests must be the primary standard by which we determine her rights to continued contact with other significant figures in her life.[6] Clearly, "these interests are interests of the child and not of the parent. Visitation is, to be sure, a benefit to the adult who is granted visitation rights with a child. But it is not the adult's benefit about which the courts are concerned. It is the benefit of the child that is vital." [7] "Visitation is not solely for the benefit of the adult visitor but is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well being by permitting partial continuation of an earlier established close relationship." *Looper v. McManus,* 581 P.2d 487, 488 (Okla.Ct.App.1978). In addition to Oklahoma, other courts follow this rationale when considering the best interest of a child separated in some drastic way from the family such child has always known.[8]

The best interests of the child concept with regard to visitation emerges from the reality that "[t]he modern child is considered a person, not a sub-person over whom the parent has an absolute and irrevocable possessory right. The child has rights...." [9] Another concern is "the need for stability in the child's life.... [T]ermination of visitation with individuals to whom the child was close would contribute to instability rather than provide stability.[10] Although each case should be considered on its own facts, we find that in the case before us, the need for continued contact is imperative in order to provide both Elizabeth and Kinder as stable an environment as possible. Elizabeth has been through a most traumatic ordeal by losing her mother at such a tender age. Taking away continued contact with the two other most important figures in her life would be detrimental to her stability and well-being, as well as to Kinder's.[11] We therefore find that visitation rights with her stepfather, Bradley Tuckwiller, and her half-brother, Kinder Tuckwiller, should be conferred upon her in order to ensure that she is not stripped of the right to continue a close relationship with the people she considers her family.

---

6. Zaharoff, *Access to Children: Towards a Model Statute for Third Parties,* 15 Fam.L.Q. 165, 190–91 (1981).

7. *Note, Visitation Beyond the Traditional Limitations,* 60 Ind.L.J. 191, 219 (1984).

8. *See Mark V. v. Gale P.,* 143 Misc.2d 487, 540 N.Y.S.2d 966 (1989) (best interests of child served by granting secondary custodial rights to stepfather after mother's death in order to ensure continued contact with stepfather and half-sibling.); *In re Bennett v. Jeffreys,* 40 N.Y.2d 543, 356 N.E.2d 277, 387 N.Y.S.2d 821 (1976) (prolonged separation of natural mother from her child and attachment of child to her custodian constituted extraordinary circumstances which warranted a rehearing on whether best interests of child would be served by being returned to mother's custody); *Collins v. Gilbreath,* 403 N.E.2d 921 (Ind.Ct.App.1980) (stepfather granted visitation rights with stepchildren after death of his wife, due to the fact that visitation provided a necessary transition to children's new life with natural father).

9. *See Note, supra* note 7, at 221 (footnote omitted).

10. *Id.* at 221–22.

11. Dr. Jeffrey Harlow, the psychologist who testified concerning the trauma Elizabeth is experiencing stated that "[s]he [Elizabeth], in her eyes, sees Mr. Tuckwiller as her father. She sees Kinder as her brother and now we are talking about taking those two people away." Elizabeth and Kinder's preschool supervisor, their babysitter, their maternal aunt, their maternal grandparents, and Mr. Tuckwiller's mother testified below as to the close relationship Elizabeth had with both Kinder and the respondent.

■ We find that the circuit court did not act in an arbitrary or capricious manner by providing for a six-month transition period before the petitioner's custody rights were fully restored. We therefore deny the petition for a writ of mandamus and/or prohibition, and decline to accept the stepfather's petition for appeal. However, we believe there is merit to petitioner's claim that visitation every other weekend is not an adequate transition schedule. Therefore, the circuit court should formulate the six-month plan as expeditiously as possible for the transition of Elizabeth to her natural father in a manner that will lessen the trauma of such a dramatic change in Elizabeth's and Kinder's lives. For the transition period to be effective in accomplishing this purpose, it should provide for ever-increasing amounts of visitation for the natural father so as to lead to a natural progression to full custody. Such transition plan should give due consideration to both parties' work and home schedules and to the parameters of the child's daily school and home life, and should be developed in a manner intended to foster the emotional adjustment of these children to this change while not unduly disrupting the lives of the parties or the children. Based on the foregoing, we further find that the best interests of Elizabeth will be served if the trial court provides that once the transition period is completed, reasonable visitation rights should be conferred upon respondent and Elizabeth's half-brother, Kinder Tuckwiller. Such visitation should be liberal and designed to foster a continued close relationship between them.

No matter how artfully or deliberately the trial court judge draws the plan for these coming months, however, its success and indeed the chances for Elizabeth's and Kinder's future happiness and emotional security will rely heavily on the efforts of these two fathers. The work that lies ahead for both of them is not without inconvenience and sacrifice on both sides. Their energies should not be directed even partially at any continued rancor at one another, but must be fully directed at developing compassion and understanding for one another, as well as showing love and sensitivity to the children's feelings at a difficult time in all their lives.

Writ denied with directions.