509 S.E.2d 897

**In the Matter of ZACHARY WILLIAM R., infant; Jesse Lee R., infant; and Karen J.R., mother of said infants; William J.R., father of Zachary William R.; Howard Todd H.; putative father of Jesse Lee R.; and Audra B.M., aunt and custodian of said infants, Respondents below.**

**Zachary William R., infant, Respondent below, West Virginia Department of Health and Human Resources, Appellees,**

**v.**

**Jesse Lee R., Respondent below, Larry and Sherry R., Intervenors below, Appellants.**

**No. 25012.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1998.

Decided Dec. 10, 1998.

F. Malcolm Vaughan, Esq., Garrett & Vaughan, Summersville, West Virginia, Guardian Ad Litem for Zachary William R.

Gene Carte, Jr., Esq., Fayetteville, West Virginia, Guardian Ad Litem for Jesse Lee R.

Michelle Rusen, Esq., Parkersburg, West Virginia, Attorney for Appellants Larry and Sherry R.

Larry Losch, Esq., Losch & Tichenor, Summersville, West Virginia, Attorney for Appellee Howard Todd H.

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara L. Baxter, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee West Virginia Department of Health and Human Resources.

PER CURIAM:

The *guardian ad litem* for the child Jesse R. and the former foster parents of Jesse

R.—Sherry and Larry R.—together appeal a December 10, 1997 order of the Circuit Court of Nicholas County. The circuit court's order denied Sherry and Larry R.'s request for visitation with Jesse R. We vacate the circuit court's order and remand this case for an evidentiary hearing regarding allegations of sexual abuse that were made against Sherry and Larry R. Following this hearing, the circuit court should reconsider the visitation issue, in light of the best interests of Jesse R.

## I.

In 1994, Jesse R.,[1] then 4 years old, was removed from his biological mother's custody by an emergency petition and order of the court, and placed in the custody of the West Virginia Department of Health and Human Resources ("DHHR"). Following an abuse and neglect proceeding, the biological mother relinquished her parental rights, and the legal custody of Jesse R. was placed in the DHHR.[2]

Jesse R.'s biological father, Todd H., was not a party to the abuse and neglect proceeding. However, Todd H. subsequently voluntarily relinquished his parental rights, so that Jesse R. could be adopted by his foster parents, Sherry and Larry R.

Sherry and Larry R. subsequently began proceedings to adopt Jesse R. All of the necessary steps for the adoption had been completed and the final paperwork was being prepared when—in October of 1997—a teenaged girl whom Sherry and Larry R. had assisted over the years accused Sherry and Larry R. of sexually abusing her.

As a result of these accusations, after being with his foster parents Sherry and Larry R. for approximately 3 years, Jesse R. was removed from this home by the DHHR. The record indicates that the accusations of sexual abuse of the teenaged girl by Sherry R., were later retracted by the girl, and that the judge was aware of this recantation. The record before this Court in the instant case contains no further information about any proceedings regarding the girl's accusations of sexual abuse.

After Jesse R. was removed from their home, Sherry and Larry R. filed a motion in the circuit court seeking visitation with Jesse R. The circuit court held a hearing on December 10, 1997. In findings of fact, the circuit judge stated that he did "not know if visitation with Mr. and Mrs. [R.] would be beneficial or detrimental to the infant respondent Jesse ... at this time." However, the circuit judge went on to conclude that it was in the best interests of Jesse R. not to permit visitation.

Sherry and Larry R. appeal the circuit court's decision to this Court, joined by the *guardian ad litem*, and contend that visitation of Jesse R. by Sherry and Larry R. would be in the best interests of Jesse R.

## II.

This Court has repeatedly recognized the needs of children whose custodial situation has been altered to have continued contact with individuals with whom the children have formed an emotional bond.

For example, we have held that visitation should be permitted between a child and her stepfather and half-brother, *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989); that circuit courts should consider whether continued association with siblings in other placements following an abuse and neglect proceeding would be in a child's best interest, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991); that visitation rights may be granted to a parent whose parental rights have been terminated due to abuse or neglect proceedings, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995); and that a child has a right to continued association with a foster parent after being placed with natural parents, if the contact is in the best interest of the child, *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996).

---

1. Consistent with our general practice, we use initials rather than full names in cases involving sensitive matters. *See In re Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. Jesse R.'s half brother, Zachary, then aged 12, was also removed from his mother's custody.

■ Regarding continued association with foster parents, this Court has stated:

A child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a determination is made that such continued contact is in the best interests of the child.

Syllabus Point 11, *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996).

■ We have held:

It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives.

3. Dr. Christina Arco, Ph.D., a licensed psychologist, examined Jesse R. for adoption purposes just a few months before he was removed from Sherry and Larry R.'s home. Dr. Arco stated in her report that Jesse R. deserved to stay with the R.'s "where [Jesse] feels safe, secure, and loved for the first time in his young lifetime."

4. While this appeal only addresses the circuit court's denial of Sherry and Larry R.'s motion for visitation, we note that the legislature has established rules and guidelines for the removal of children from foster homes. These guidelines are found in *W.Va.Code*, 49–2–14 [1995] it provides, in pertinent part:

(a) The state department may temporarily remove a child from a foster home based on an allegation of abuse or neglect, including sexual abuse, that occurred while the child resided in the home. If the department determines that reasonable cause exists to support the allegation, the department shall remove all foster children from the arrangement and preclude contact between the children and the foster parents. If, after investigation, the allegation is determined to be true by the department or after a judicial proceeding a court finds the allegation to be true or if the foster parents fail to contest the allegation in writing within twenty calendar days of receiving written notice of said allegations, the department shall permanently terminate all foster care arrangements with said foster parents: Provided, That if the state department determines that the

Syllabus Point 3, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

■ Clearly "[t]he best interests of a child are served by preserving important relationships in that child's life." Syllabus Point 2, *State ex rel. Treadway v. McCoy*, 189 W.Va. 210, 429 S.E.2d 492 (1993).

Sherry and Larry R. were the foster parents of Jesse R. for approximately 3 years and had formed a significant relationship with the child.[3] It appears that Jesse R. was removed from the one stable home he had known, and was placed elsewhere, without any type of transition and without affording his foster parents any visitation.

■ Applying the foregoing principles, we conclude that the circuit court did not have a sufficient record to support its determination to deny visitation to the appellants. Consequently, such a denial was an abuse of the circuit court's discretion.

We are troubled that the circuit court did not consider, examine and weigh any evidence concerning the alleged sexual abuse.[4]

abuse occurred due to no act or failure to act on the part of the foster parents and that continuation of the foster care arrangement is in the best interests of the child, the department may, in its discretion, elect not to terminate the foster care arrangement or arrangements.

(b) When a child has been placed in a foster care arrangement for a period in excess of eighteen consecutive months and the state department determines that the placement is a fit and proper place for the child to reside, the foster care arrangement may not be terminated unless such termination is in the best interest of the child and:

(1) The foster care arrangement is terminated pursuant to subsection (a) of this section;

(2) The foster care arrangement is terminated due to the child being returned to his or her parent or parents;

(3) The foster care arrangement is terminated due to the child being united or reunited with a sibling or siblings;

(4) The foster parent or parents agree to the termination in writing;

. (5) The foster care arrangement is terminated at the written request of a foster child who has attained the age of fourteen; or

(6) A circuit court orders the termination upon a finding that the state department has developed a more suitable long-term placement for the child upon hearing evidence in a proceeding brought by the department seeking removal and transfer.

Instead, it appears that the circuit court relied upon the mere fact of (retracted) allegations of abuse of another child to deny Sherry and Larry R. visitation with Jesse R.

We reverse the circuit court's order of December 10, 1997. We remand this case to the Circuit Court of Nicholas County with directions to conduct an evidentiary hearing. The circuit court should determine, *inter alia*, what evidence if any exists supporting the allegations of sexual abuse against Sherry R. We further require the circuit court to re-examine the issue of visitation, in light of the evidence adduced at the hearing and the principles enunciated in this opinion, and to make full findings of fact and conclusions of law on the issue of whether visitation by Sherry and Larry R. would be in the best interests of Jesse R.

Reversed and Remanded with Directions.

Justice McGRAW did not participate in the decision of this case.