# STATE OF WEST VIRGINIA
# IN THE SUPREME COURT OF APPEALS

**In Re: J.F.**

**No. 12-1444 (Tucker County 11-JA-7)**

**FILED**

**June 12, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The minor child, J.F.,[1] by her Guardian ad Litem (hereinafter "the Guardian"), appeals the Circuit Court of Tucker County's November 13, 2012, disposition order. By that order, the circuit court terminated the mother's and father's (hereinafter, collectively, "the parents") parental rights to J.F.'s four older siblings; however, the lower court declined to terminate the parents' parental rights to J.F. The Guardian, as well as the Department of Health and Human Resources (hereinafter "DHHR"), submits that the lower court erred when it failed to terminate the parents' parental rights to J.F. The parents, conversely, maintain that the lower court recognized that the custodial circumstances of J.F. are significantly different from the other children's situations, and that the court appropriately maintained their parental rights to J.F. Based on the parties' briefs, the appendix record designated for our consideration, and the pertinent authorities, we find that the circuit court erred. We hereby reverse the rulings made by the lower court regarding J.F., and, further, we remand this case for entry of an order in accordance with this decision. This case presents no new or significant questions of law. Furthermore, for the reasons set forth herein, this case satisfies the "limited circumstance" requirement of Rule 21(d) and is appropriate for the Court to issue a memorandum decision rather than an opinion.

While the underlying abuse and neglect case ultimately concerned five children, only the youngest, J.F., is at issue in this appeal. On November 8, 2011, the DHHR filed a petition alleging chronic abusive and neglectful parenting by both parents. J.F.'s four older siblings were the minor children at issue therein. The assertions included inappropriate and unsafe housing, improper supervision, substantial emotional abuse, as well as the family's history with Child Protective Services.[2] Thereafter, amended petitions were filed,

---

[1] "We follow our past practice in juvenile . . . cases which involve sensitive facts and do not utilize the . . . names of the parties." *SER W. Va. Dep't of Human Servs. v. Cheryl M.,* 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

[2] The history included the older children's exposure to domestic violence
(continued...)

asserting that the home was infested with cockroaches and ants, the parents' lack of supervision over the children led to them being sexually abused by a boy in the neighborhood, and the parents' failure to take affirmative action thereafter to protect the children from further sexual abuse. It also was alleged that the parents' lack of control over the children resulted in the children destroying neighbors' property through the setting of fires. Subsequent thereto, J.F. was born. J.F. was included in the proceedings with the filing of second amended petitions on November 23, 2011.

A preliminary hearing was held on December 2, 2011. As a result of that hearing, the circuit court ordered the removal of the four older children from the parents' home, but maintained J.F.'s physical custody with her parents because of the mother's desire to breastfeed J.F. Legal custody of J.F. was placed with the DHHR.

On January 4, 2012, at the adjudicatory hearing, both parents filed written stipulations wherein they admitted to unsuitable housing conditions, a failure to supervise the children leading to the children's destruction of others' property and to the children's victimization through sexual abuse, and severe emotional abuse. The circuit court adjudicated all five children as abused and neglected children. The parents moved for post-adjudicatory improvement periods, which were awarded for a six-month period.

At the review hearing on February 23, 2012, it was reported that the parents were complying with services and were exercising unsupervised visitation with the four older children. However, concerns were raised at a motions hearing on April 3, 2012, when it was revealed that the mother had discontinued her medication without approval from her physician and had stopped attending her therapy sessions. At a later review hearing on July 25, 2012, the Guardian informed the circuit court that the parents had not substantially complied with their improvement periods, and; therefore, the Guardian recommended termination of parental rights to all five children.

Dispositional hearings were held on September 25, 2012, and continued on October 9, 2012. The circuit court heard testimony from several witnesses, including the DHHR caseworker. The caseworker reported that the emotional abuse to the children had not improved, and she recommended terminating the parents' parental rights to all five children. The circuit court found that the instances of abuse and neglect could not be

[2](...continued)
between the mother and her ex-husband. By all accounts, the three eldest children and the mother continue to suffer the effects of severe domestic violence, which violence included the ex-husband's attempt to set fire to the family's home while they were inside.

substantially remedied within a reasonable time. The lower court terminated the parents' parental rights to J.F.'s four older siblings but allowed the parents to retain their rights to J.F., who was eighteen months of age.[3] The Guardian for J.F. appealed to this Court, arguing that the circuit court should have terminated the mother's and father's parental rights to J.F. when it terminated the parental rights to J.F.'s four older siblings.

> Our review in the realm of abuse and neglect cases has been stated as follows:
> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In the Interest of: Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Mindful of these applicable standards, we proceed to consider the parties' arguments.

On appeal to this Court, the Guardian argues that the circuit court should have terminated the mother's and father's parental rights to J.F. As articulated by the Guardian, abuse and neglect of one child in the home equates to abuse of all children in the home. Although J.F. was not born when the initial abuse and neglect petitions were filed, she was included in the second amended petition, as well as in the stipulations her parents later made to the circuit court admitting their abuse and neglect of the children. The circuit court found all five children to be abused and neglected and, accordingly, terminated the parents' parental rights to the four older children. The lower court declined, however, to terminate the parents'

---

[3]All five of the children have the same mother. The three eldest children share the same father, who voluntarily relinquished his paternal rights. J.F.'s father, whose parental rights are at issue in this appeal, is also the father of the fourth child. The termination of parental rights to the four older children was not appealed, and the time within which to file an appeal has expired.

rights to J.F. The DHHR supports the Guardian's position and adds that the circuit court failed to make findings to support its decision regarding J.F. The DHHR contends that the evidence proved that all children in the home were abused and that the best interests of J.F. would be served by termination of the parents' parental rights.

Conversely, the parents jointly contend that the circuit court did not err in its decision to preserve their parental rights to J.F. The parents argue that the circuit court heard extensive evidence and found that improvements had been made by the parents, but not to the extent that all five children could be reunited in the home. The parents explain that they could care for J.F. properly without the four older children in the home, some of whom have special needs and required extensive parenting time and significant caregiving functions. Further, the parents assert that J.F. was not born when the abuse and neglect occurred to the older children; therefore, they claim that abuse of the older children does not necessitate a finding that J.F. was abused.[4]

As we stated in Syllabus point 2 of *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995):

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W. Va. Code [§] 49-1-3(a) (1994).

In the *Christina L.* case, this Court discussed the requirement that a child's health or welfare must be harmed or threatened before abuse can be found. Even though the case ultimately was remanded for factual findings, we recognized that, when the child resides in the same home as a child who experiences direct abuse, the child may be considered to be the victim of abuse even when no direct acts have been perpetrated against that child. *See also* W. Va. Code § 49-1-3(1)(A) (2012) (Supp. 2012).

The parents argue that *Christina L.* is not applicable to the present case because J.F. was not in the home when the abuse of the four older children occurred. Indeed, they assert, she had not yet been born. However, the parents' argument ignores the record evidence in the case regarding abuse to J.F. Additionally, we have recognized that "[p]rior acts of violence, physical abuse, or emotional abuse toward other children are relevant in a

---

[4]We note that J.F. was adjudicated as an abused and neglected child by the circuit court.

4

termination of parental rights proceeding[.]" Syl. pt. 8, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). In the present case, all five children were the subject of abuse and neglect petitions. All five children were adjudicated as abused and neglected children by the circuit court. The record evidence shows that the parents' abusive and neglectful behavior did not end with the removal of the four older children from the home. Even though J.F. was not in the home when the initial petition was filed by the DHHR, all witnesses testified that the parents were unsuccessful in completing their improvement periods and that their behavior continued to be abusive. J.F. clearly was the victim of the same inadequacies from her parents that were experienced by the older children.

> This Court has instructed that,
>> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. pt. 6, *Carlita B.,* 185 W. Va. 613, 408 S.E.2d 365. Further guidance is provided as follows:

> Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.

Syl. pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996). *See also Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children[.]" (citation omitted)).

The parental rights to the four eldest children were terminated based, in part, on the circuit court's finding that there "is not enough to save these children from continued exposure to neglect and emotional abuse." Despite its contemporaneous finding that "an attempt to maintain the minor children . . . in the natural home at this time is contrary to the welfare and best interests of the children[,]" the circuit court continued, with specific regard to J.F., that "there shall be no termination of parental rights and legal custody is hereby restored to the biological parents[.]" The circuit court failed to explain or support its rationale for the different treatment of the five children, or to discuss why the best interests of J.F. were different than the best interests of the four older children. Moreover, the

evidence, in the form of the witnesses' testimony[5] detailing the parents' unsuccessful improvement plan and the recommendations of multiple service providers that the parents' parental rights to all five of the children be terminated , indicated that the best interests of J.F. were the same as the older four children and likewise necessitated termination of the parents' parental rights.

Lastly, because of J.F.'s young age, we feel compelled to reiterate the following fundamental principle:

> The early, most formative years of a child's life are crucial to his or her development. *In re Carlita B.*, 185 W. Va. 613, 623, 408 S.E.2d 365, 375 (1991). We have repeatedly emphasized that "children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement." *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 257, 470 S.E.2d 205, 211 (1996).

*SER W. Va. Dep't of Health & Human Res. v. Pancake*, 224 W. Va. 39, 43, 680 S.E.2d 54, 58 (2009). We are cognizant of the emotional impact that a change in custody may have on a child. In this regard,

> [i]t is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives.

Syl. pt. 3, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991). In *Honaker v. Burnside*, 182 W. Va. 448, 452-53, 388 S.E.2d 322, 326 (1989), we stated that "a child's best interests must be the primary standard by which his rights to continued contact with other significant figures in his life are to be determined." In a case such as the present one, where

---

[5]The witnesses testified that the parents' inability to care for their children was demonstrated by their actions and inactions both before and after the four older children were removed from their home. As an example, it was noted that the parents did not care properly for a cat that lived in the home. The cat's poor health had to be pointed out to the parents before they took notice that medical help was needed. Further, the Guardian cited testimony from two separate witnesses who testified to an incident at a local community fair where the parents were observed emotionally abusing the children by cussing at them and degrading them in front of the other attendees.

children lose their biological parents through termination of the parents' parental rights, all efforts should be made to maintain relationships with any other blood relatives. On remand, the circuit court is directed to develop a plan whereby J.F.'s transition away from her biological parents can be achieved in the manner that is least traumatic to her and in her best interests, including a finding regarding sibling and/or parental post-termination visitation.

In summary, based on the facts that J.F. was in the home when abuse occurred, that both parents failed their respective improvement periods, and that it was found that the older children's abuse and neglect could not be rectified, it was clear error to leave the youngest and, therefore, most vulnerable, child in the home. The parents have shown a pattern of poor judgment and an inability to properly care for children both physically and emotionally. Importantly, as recognized in the circuit court's order, there is no reasonable likelihood for any future success in their ability to parent. J.F. is entitled to the same protection as the older children received, and the lower court clearly erred when it preserved the parents' parental rights to J.F. and left her in their care.

For the foregoing reasons, the Circuit Court of Tucker County's November 13, 2012, disposition order is reversed, and this case is remanded for entry of an order terminating the parents' parental rights to J.F. Recognizing the emotional impact that this decision may have on J.F., the lower court is ordered to ascertain the best interests of J.F. in developing a transition plan for the custody of J.F., as well as in considering matters of continued visitation. Finally, in recognition of the grave potential for abuse and neglect that J.F. faces while she remains in her parents' care, we direct the Clerk of the Court to issue the mandate in this case contemporaneously with this opinion to facilitate and expedite J.F.'s relocation to a safe and secure environment.

Reversed and Remanded.

**ISSUED:  June 12, 2013**

**CONCURRED IN BY:**

**Chief Justice Brent D. Benjamin**
**Justice Robin Jean Davis**
**Justice Margaret L. Workman**
**Justice Menis E. Ketchum**
**Justice Allen H. Loughry II**