**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**March 16, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **D.P.**

**No. 20-0499** (Clay County 18-JA-51)


**MEMORANDUM DECISION**


Petitioner Maternal Grandmother V.B., by counsel Erica Lord, appeals the Circuit Court of Clay County's March 23, 2020, order granting permanent placement of D.P. with Father T.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael W. Asbury Jr., filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in granting the father custody of the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, the DHHR filed an abuse and neglect petition against the child's parents alleging drug abuse. Petitioner was named as a nonabusing party because the child resided with her prior to the initiation of the proceedings. The circuit court granted the DHHR temporary custody of D.P., although petitioner was given physical custody of the child. The circuit court ordered the parents to remain sober and granted them supervised visitation with the child.

The circuit court held an adjudicatory hearing in January of 2019 wherein it found that the mother had abused controlled substances while the child was in her care and the father failed to appropriately supervise the child or provide a safe and suitable home. The court continued physical custody of the child with petitioner and again ordered the parents to remain sober. In March of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

2019, the circuit court held a hearing wherein it granted the parents six-month improvement periods that required them to submit to substance abuse testing and maintain adequate housing.

In January of 2020, the circuit court held a final dispositional hearing. At the hearing, a Child Protective Services ("CPS") worker testified that the child's parents had complied with the terms of their improvement periods. The worker testified that the parents maintained suitable housing, passed all of their drug screenings, participated in parenting and adult life skills classes, completed outpatient substance abuse treatment, and complied with the recommendations resulting from their psychological evaluations. In light of this evidence, the circuit court determined that the parents had successfully completed their improvement periods. During the hearing, petitioner requested that the court grant her permanent custody of the child. In reaching a determination on this issue, the circuit court found that petitioner was a psychological parent of the child given their strong relationship. The circuit court further considered that the child was living with petitioner prior to the abuse and neglect petition and that petitioner had kept physical custody of the child since December of 2018, when the proceedings began. Nevertheless, the circuit court found that the child's best interest outweighed petitioner's request for custody. Specifically, the circuit court found that the child's father had successfully completed his improvement period and that it was in the child's best interest to be returned to his father's custody. Additionally, the circuit court found that it was also in the child's best interest to have an ongoing relationship with petitioner and the mother. As such, the circuit court ordered visitation between the mother and the child, and petitioner and the child. It is from the March 23, 2020, order that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred by finding that the child should be placed in the father's custody. Petitioner argues that the court erred in determining placement for

---

[2]The parents both successfully completed their improvement periods and the petition against them was dismissed. The permanency plan for the child is to remain in the custody of his father.

the child without the father ever having an overnight visitation with the child or without ordering the guardian to conduct a proper investigation as to the best interests of the child.

We first address the circuit court's finding that petitioner is a psychological parent. As this Court has enunciated:

> A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our prior decision of *In re Brandon L.E.*, 183 W. Va. 113, 394 S.E.2d 515 (1990), that case is expressly modified.

Syl. Pt. 3, *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005). In elaborating on the definition of a psychological parent, this Court has observed that

> [i]n the cases in which this Court has determined a person to be a psychological parent to a child, that person typically has resided in the child's household and interacted with the child on a daily basis. *See, e.g., In re Clifford K., id.*; *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996); *Simmons v. Comer*, 190 W.Va. 350, 438 S.E.2d 530 (1993); *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989). Moreover, a psychological parent is one who essentially serves as a second parent to a child and is a relationship to which the child's parent has consented. *See generally In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138; *Simmons*, 190 W.Va. 350, 438 S.E.2d 530; *Honaker*, 182 W. Va. 448, 388 S.E.2d 322.

*In re Visitation & Custody of Senturi N.S.V.*, 221 W. Va. 159, 167, 652 S.E.2d 490, 498 (2007).

While recognizing the role and value of psychological parents, this Court also has cautioned against an undue over-extension of the concept. In *Clifford K.*, this Court remarked that "the limited rights of a psychological parent cannot ordinarily trump those of a biological or adoptive parent to the care, control, and custody of his/her child." 217 W. Va. at 644, 619 S.E.2d at 157. Likewise, in *Honaker v. Burnside*, 182 W. Va. 448, 452, 388 S.E.2d 322, 325 (1989), we observed that "[a]lthough we recognize the attachment and secure relationship" between a child and a psychological parent, "such bond cannot alter the otherwise secure natural rights of a parent . . . ." This Court further discussed the issue in *Senturi*, stating,

> [o]bviously, a child will hold in high esteem any person who looks after him/her, attends to his/her needs, and lavishes him/her with love, attention, and affection. However, simply caring for a child is not enough to bestow upon a care giver psychological parent status. Were this the law of the State, any person, from day

3

care providers and babysitters to school teachers and family friends, who cares for a child on a regular basis and with whom the child has developed a relationship of trust could claim to be the child's psychological parent and seek an award of the child's custody to the exclusion of the child's parent. Clearly, this is not the result contemplated by this Court's prior holding [in *Clifford K.*] . . . .

In its order, the circuit court was clear that petitioner was a dedicated primary caregiver, had formed a strong bond with the child, and had cared for D.P. for a significant period of time. Nor did the circuit court cite any concerns about petitioner's capacity to raise the child and, instead, found that she had "substantially provided emotional and financial support" for the child since at least May of 2018. However, the circuit court was also clear that "no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child." Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

According to petitioner, it was error to grant the father custody of the child because the guardian failed to undertake a proper investigation of the father's ability to care for the child and the child's best interests. Contrary to petitioner's argument, the guardian ad litem did not fail to undertake a proper investigation, nor is there any indication that the guardian ad litem failed to file any required reports during the proceedings. On the contrary, the circuit court heard substantial evidence from the guardian ad litem over several months and the guardian provided reports concerning the child. In addition to the guardian's investigation, the circuit court also heard from a CPS worker, the child's parents, and petitioner, in addition to considering DHHR reports, service provider reports, and arguments from counsel. The CPS worker testified that the parents had successfully completed their improvement periods and had suitable housing, passed all drug screens, and completed all services required by the DHHR. While petitioner asserts that there was insufficient evidence to award the father custody of the child, especially in the form of the guardian's investigation, the record simply does not support this assertion.

Further, petitioner's argument that the circuit court erred in granting the father custody because he never exercised overnight visitation with the child does not entitle her to relief. As set forth above, the father established through his successful completion of his improvement period that he was fit and capable of appropriately parenting the child. That petitioner believes the father was required to demonstrate additional parental capacity is not availing. Importantly, the circuit court found that the father and the child exhibited a substantial bond that was fostered when the child lived with him "on a continuous basis . . . for the first ten . . . months of his life" and at a time when the father was not alleged to have engaged in conduct that constituted abuse and/or neglect. While we acknowledge that the father's failure to supervise the child ultimately resulted in his adjudication, the circuit court nonetheless cited the fact that, prior to this problematic conduct, the father "provided for the day-to-day needs of the child on a continuous basis while he was living in [the father's] home." Given that the father remedied the issues impacting his parenting abilities through his successful completion of an improvement period—in addition to the evidence that established that the father was employed full-time and had a fit, suitable home—it is clear that the father had nothing left to demonstrate in terms of his ability to safely care for the child. In keeping with West Virginia Code § 48-9-206, the circuit court properly considered the father's prior performance of parenting functions in allocating custodial responsibility. As such, petitioner is incorrect that overnight visitation was necessary to establish that the father could care for the child

prior to regaining custody.[3] Finally, although the DHHR did not obtain the child's medical records, petitioner makes no assertions that the child's medical records would preclude granting custody of the child to the father. The circuit court considered placement of the child carefully and thoughtfully weighed the outcomes. As such, the circuit court had ample evidence to support its findings and conclusion that placement of the child with the father was in the child's best interest.

Moreover, although petitioner retained physical custody of the child during the course of the proceedings and was found to be a psychological parent, the evidence as a whole indicated that the best interest of the child necessitated permanent placement with the child's father, with petitioner continuing to receive regular visits and involvement in the child's life. Finally, we have previously held that "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). After much consideration on the record, the circuit court properly found that the evidence at the permanency hearings demonstrated that custody with the father was in the child's best

---

[3]In addressing petitioner's references to overnight visitation, an additional issue requires analysis. At the outset, it is important to note that petitioner failed to cite to any authority regarding the transfer of custody of children subject to abuse and neglect proceedings. While she does make passing reference to "ripping the child out of" her home and the "abrupt change in custody," petitioner does not cite to any authority regarding this issue or actually structure an argument related to this Court's prior direction on custody transition. In fact, other than her citation to the standard of review and our holding in Syllabus Point 3 of *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996), that the health and welfare of the child is the primary goal in abuse and neglect proceedings, petitioner cites no authority at all in support of her arguments on appeal. This is in direct contradiction to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. ("The brief must contain an argument exhibiting clearly the points of . . . law presented . . . and citing the authorities relied on."). In short, petitioner's argument is couched in terms of the circuit court's alleged error in placing the child with the father, not the manner in which the child was transferred to the father's care.

However, it is necessary to remind the circuit court that

"[i]t is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives." Syl. Pt. 3, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

Syl. Pt. 5, *In re C.M.*, 235 W. Va. 16, 770 S.E.2d 516 (2015). Here, the appendix record shows that the father participated in multiple supervised and unsupervised visits with the child prior to regaining custody. Nevertheless, we remind the circuit court of the need to gradually transition children from one placement to another in keeping with their best interests.

interest. Accordingly, we find that the circuit court did not err in denying petitioner placement of the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 23, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 16, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton