575 S.E.2d 325

**In re JADE E. G. and James A. G.**

**No. 30619.**

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 6, 2002.

Decided Dec. 4, 2002.

---

8. U.S. Const. amend. V; W.Va. Const. art. III, § 5.

award custody of the appellant's minor children to the appellees, Reginald G. and Patricia G., the children's paternal grandparents. We reverse the decision of the trial court and restore custody of Jade E. G. and James A. G. to the appellant, Kimberly H.

## I.

The appellant Kimberly H. and Aaron G. are the parents of the two children, Jade E. G., born November 20, 1990, and James A. G., born October 1, 1993. Before Jade's birth, the appellant Kimberly H. and Aaron G. resided at the home of the appellees, Reginald G. and Patricia G., Aaron G.'s parents. The appellant and her newborn, Jade, returned to the appellees' home following Jade's birth. The appellant and Jade lived with the appellees for an extended period time after Jade's birth; however, exactly how long is unclear. Estimates range from a couple of months to more than a year. James A. G., the appellant's second child, has also resided with the appellees since he was approximately one month old.[1]

At some point after Jade's birth, the appellant and Aaron G. moved out of the appellees' home. Because the appellant worked evenings, both the appellant and the appellees agreed that it was in Jade's best interest for Jade to stay overnight with the appellees, as opposed to waking her up in the middle of the night. This was the beginning of a pattern where Jade E. G., and later James A. G., spent most nights at the appellees' home while spending significant time with the appellant and Aaron G. during the day. Later, the appellant worked in the construction industry and had to leave for work at 4:00 a.m. Often, she would not return from work until after 5:00 p.m. At another point, the appellant worked as a school bus driver, leaving for work before 5:00 a.m., and worked a second job as a waitress in the evenings. Additionally, only a wood stove heated the home of the appellant and Aaron G., and the home had no drinkable water. The lack of heat and a lack of drinkable water in the

Mark W. Kelley, Esq., Ray, Winton & Kelley, Charleston, for Appellant.

Jennifer Dickens Ransbottom, Esq., Tyson & Tyson Huntington, for Appellee.

PER CURIAM.

This is an appeal from an order of the Circuit Court of Mason County that adopted a family law master's recommendation to

---

1. This case has a somewhat tortured factual and procedural history that is further complicated by the lack of transcripts of the underlying hearings.

appellant's home, along with her work schedule, reinforced the pattern of the children staying with the appellees. Also, during much of this time, Aaron G. physically abused the appellant.

On January 16, 1998, the appellant filed for a family violence protective order against Aaron G. The appellant was awarded temporary possession of their home and temporary custody of their two children. On February 4, 1998, the appellant took Jade E. G. and James A. G. home to live with her.[2]

On February 5, 1998, the paternal grandparent-appellees filed an *ex parte* petition for custody of the appellant's children.[3] The appellees claimed that they could not serve the appellant with a copy of the petition because they feared that she would flee the jurisdiction with her children. On February 26, 1998, the family law master ("FLM") held a temporary hearing on the *ex parte* relief requested, and on February 27, 1998, the FLM recommended awarding custody to the grandparent-appellees.

The appellant promptly filed a petition for review of the FLM's recommendation in circuit court on April 8, 1998. The circuit court postponed scheduling a hearing on the appellant's petition to allow the parties time to negotiate. Ultimately, the parties entered into an agreed order on August 26, 1998, remanding the case to the FLM. The agreed order directed the FLM to appoint a *guardian ad litem* for the children. The order also directed Dr. Stephen O'Keefe, a psychologist, to evaluate the parties and the children.

In December of 1998, Dr. O'Keefe conducted psychological evaluations of the parties and the children. In his reports to the court, he recommended giving the appellees physical and legal custody of the children and giving the appellant liberal visitation rights.

The *guardian ad litem*, attorney David Nibert, also conducted an investigation, and in February 1999 issued a report recommending that the appellant should have custody of her children.

On June 17, 1999, the FLM recommended awarding custody of the two children to the appellees. In the order, the FLM found that the appellees were the children's psychological parents and were the children's primary caretakers.

The appellant again promptly filed a second petition for review of the FLM's recommendation in circuit court on July 30, 1999. On December 3, 1999, the circuit court held oral arguments on the appellant's petition for review. At the conclusion of the hearing, Judge Clarence Watt informed the parties that he had been the presiding judge in Aaron G.'s criminal case, and asked whether any of the parties had a problem with his remaining on the case. The record is silent as to any responses.

Thereafter, for several months, the parties engaged in negotiations. Their efforts failed, and by letter dated September 18, 2000, appellant's counsel requested that Judge Watt[4] rule on the appellant's petition for review that was filed over one year earlier. On March 26, 2001, newly-elected Judge Thomas Evans held a hearing on the appellant's petition for review. Some four months later, on August 1, 2001, the circuit court affirmed the FLM's recommended decision awarding permanent custody of James A. G. and Jade E. G. to the grandparent-appellees. It is from this order that the appellant appeals.

## II.

This Court has previously stated a three-pronged standard for reviewing the findings of family law masters that circuit courts adopt.[5]

2. On May 15, 1999, the appellee Aaron G. pled guilty in Mason County Circuit Court to the malicious wounding of the appellant and to second degree murder of another party. On March 14, 2002, he was sentenced to two to ten years for the malicious wounding, and forty years for the murder. The sentences are to run consecutively.

3. The grandparent-appellees claim that the appellant "took" the children from them in retaliation for their defense of their son Aaron G. in the domestic violence charges filed by the appellant.

4. Judge Clarence Watt retired from office on December 31, 2000.

5. Effective January 1, 2002, family law masters were replaced by family court judges. *See West Virginia Constitution*, Article VIII, § 16; *W.Va. Code*, 51–2A–1 to –23 [2001].

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syllabus Point 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

The appellant argues that the FLM and the circuit court applied incorrect legal standards. Our leading case addressing the transfer of custody of children from a natural parent to a third party is *Overfield v. Collins,* 199 W.Va. 27, 483 S.E.2d 27 (1996). In *Overfield,* this Court outlined the issues, standards, and burdens of proof when relating to the custody of children who have been placed in the care of a third party by a parent.

■ In order for a third party to seek custody of a child from a fit natural or adopted parent, a "transfer" of custody must first have occurred. When there is no written instrument transferring custody, this Court suggested in *Overfield* that "[a] critical element of proof demarcating temporary custody and permanent custody is the length of time of the custodial change. The amount of time which passes after a transfer of custody, together with all the other circumstances, shall be an important factor in determining whether such transfer was intended to be temporary or permanent." *Overfield,* 199 W.Va. at 38, fn. 9, 483 S.E.2d at 38, fn. 9. The appellant was awarded custody of her two children as part of a domestic violence protective order on January 16, 1998, only to have a family law master to change custody from the appellant mother in favor of the paternal grandparents a few days later.

In the instant case, there is no written instrument transferring custody to the appellees. Further, there is no record of a verbal transfer of custody. Instead, the parties simply verbally agreed that, given the appellant's work schedule, the children would be better off sleeping at the appellees' home. This "sleeping over" developed into a pattern of the children mostly living with the appellees. The poor physical condition of the appellant's home and Aaron G.'s physical abuse of the appellant reinforced this pattern.

The appellant claims that she never intended to transfer custody of the children to the appellees. Further, the FLM did not find that the appellant transferred custody to the appellees. Instead, the FLM ignored the custody issue and found that the appellees were the "primary caretakers" of the children, and that the children considered the appellees to be their "psychological parents." While the findings of "primary caretakers" and "psychological parent" are informative, they are not controlling in the instant case.

■ At most, what occurred in the instant case was a temporary transfer of custody. When there is a temporary transfer of custody, under *Overfield,* a court must decide whether the natural parent is fit and then analyze whether returning the children to their natural parent(s) would cause a significance disturbance to the children. In *Overfield,* this Court stated:

When a natural parent transfers temporary custody of their child to a third person and thereafter seeks to regain custody of that child, the burden of proof shall be upon that parent to prove by clear and convincing evidence that he or she is fit; thereafter the burden of proof shall shift to the third party to prove by clear and convincing evidence that the child's environment should not be disturbed because to do so would constitute a significant detriment to the child notwithstanding the natural parent's assertion of a legal right to the child.

Syllabus Point 2, in part, *Overfield v. Collins,* 199 W.Va. 27, 483 S.E.2d 27 (1996).

■ Parental fitness can be defined in several ways.

A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody,

the right of the parent to the custody of his or her child will be recognized and enforced by the courts.

Syllabus, *State ex rel. Kiger v. Hancock,* 153 W.Va. 404, 168 S.E.2d 798 (1969); Syllabus Point 1, *In re Jeffries,* 204 W.Va. 360, 512 S.E.2d 873 (1998).

The FLM did not find, in the instant case, that the appellant was an unfit parent; therefore, the appellant has a constitutional right to the care, custody, and control of her children. It is undisputed that since extricating herself from a volatile domestic situation, the appellant has made progress in improving her life, including finding a new place to live that was large enough for her children.

■ As there was no determination that the appellant was an unfit parent, we now look to whether removing the children from the appellees' home would "constitute a significant detriment" to the children. "[I]n those cases where the custodial change is temporary, a third party does not sustain its burden of proof merely by demonstrating that they might possibly furnish the child a better home or better care." *Overfield,* 199 W.Va. at 36, fn. 7, 483 S.E.2d at 36, fn. 7. "While courts always look to the best interests of the child in such controversies, we know of no rule of law requiring the denial of legal custody of an infant to one legally entitled thereto merely because some other person might possibly furnish the child a better home or better care." *State Department of Public Assistance v. Pettrey,* 141 W.Va. 719, 725, 92 S.E.2d 917, 921 (1956). If a court were to simply compare the financial situations of the parties involved, grandparents, who often own their homes and have pensions, would routinely prevail over less financially well-off parents. "While we may not be able to provide every child with the perfect, white bread, cookie-cutter childhood replete with sitcom-like suburban experiences, the court system must fashion a solution that provides protection for children, with a rea-

sonable opportunity to reach adulthood safely and in as good physical and mental health as practicable." *In re Emily,* 208 W.Va. 325, 345, 540 S.E.2d 542, 562 (2000) (Starcher, J., concurring).

The appellant, since filing the domestic violence protective order against Aaron G., the father of her children, has attempted to create a stable home-life for her children, only to be frustrated by the paternal grandparents of the children refusing to allow her to do so. The appellant deserves the opportunity to provide her children with a "reasonable opportunity" to reach adulthood successfully. Returning her children to her custody would not "constitute a significant detriment to the children." We find that the FLM and the circuit court erred in awarding permanent custody of Jade E. G. and James A. G. to the appellees.

Furthermore, this Court has recognized "the right of a child to continued association with those individuals with whom the child has formed an attachment." *Snyder v. Scheerer,* 190 W.Va. 64, 72, 436 S.E.2d 299, 307 (1993). Jade E. G. and James A. G. clearly have a deep and abiding attachment to the appellees, their paternal grandparents, and it would be in the children's best interests to have substantial and continued meaningful contact with the appellees.

## III.

We, therefore, reverse the lower court's rulings and award permanent custody of Jade E. G. and James A. G. to the appellant.[6] We remand to the circuit court to enter an order facilitating this decision with further directions that the grandparent-appellees be granted extensive and meaningful visits with their grandchildren.

Reversed.

---

6. The lower courts are reminded of the direction provided in Syllabus Point 3, *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991):

It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possi-

ble, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives.