483 S.E.2d 27

Shirley V. OVERFIELD, Appellee

v.

Tammy Lynn COLLINS, Appellant.

No. 23046.

Supreme Court of Appeals of West Virginia.

Submitted May 1, 1996.

Decided Dec. 6, 1996.

Rehearing Refused Feb. 11, 1997.

Regina L. Charon, Morgantown, for Appellee.

Fonda L. Holehouse, Morgantown, for Appellant.

RECHT, Judge:[1]

This is an appeal by Tammy Lynn Collins (hereinafter "appellant"), the natural mother of Aaron and Ashley Collins, from a judgment of the Circuit Court of Monongalia County denying appellant's efforts to regain custody of her two children, who have resided with their maternal grandparents since January 1991.[2]

This case requires a review and analysis of (1) the examination of the burden and quantum of proof when a natural parent requests the return of a child after transferring temporary or permanent custody of a child to a third person; and (2) the formalities involved in the voluntary transfer of the custody of

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. The children were initially transferred to the maternal grandparents, James and Shirley Overfield. James Overfield died in February 1994; therefore, the only grandparent who is a party to this appeal is Shirley Overfield, who will be referred to in various portions of this opinion as the "appellee."

children from a natural parent to a third party.

The Circuit Court of Monongalia County found the appellant had knowingly and voluntarily transferred permanent custody of her children to her parents in April 1991. Upon that finding, the circuit court affirmed the conclusion of the family law master that the appellant failed to satisfy her burden of proving that the return of the custody of her two children would promote their best interests and welfare. Because we hold that the predicate finding of the family law master and circuit court that the appellant intended to permanently transfer custody of her children to her parents was clearly erroneous, the judgment denying a change of custody to the appellant must be reversed and remanded to the Circuit Court of Monongalia County with specific directions consistent with this opinion.

I.

FACTS

The appellant and Marc Collins were married in June 1981. This union produced two children, Aaron and Ashley Collins, whose respective ages at this time are fourteen and eleven.

In December 1985, approximately four months after the birth of Ashley, the Collins' home was destroyed by fire. As a result of the loss of their home, the Collins family began living with the appellant's parents, James and Shirley Overfield. While living in the Overfield home, the Collinses experienced marital difficulties which ultimately led to their divorce in September 1986. The appellant was awarded custody of the two children, and Mr. Collins was granted visitation privileges with both children.

In November 1986, the appellant and her two children returned to a home rebuilt on the site upon which the former house was located. Four years later, in January 1991, the appellant suffered a spinal injury as a result of a sporting accident. This condition rendered her disabled for approximately thirteen months, during which time she was terminated from her employment as an administrative secretary to the West Virginia University News and Information Services, following the expiration of her accumulated sick leave.

Because of the appellant's desperate financial and physical problems, she requested help from her parents who agreed to assist her in the care of the children. This arrangement initially required the children to spend a substantial amount of time with their grandparents. The appellant's plea for help set into motion a sequence of events from which evolved the tragic custody battle we now have before us.

In April 1991, the appellant's parents approached her with what the appellant describes as a plan to better care for the children. The cornerstone to this plan was an affidavit prepared by a lawyer retained by the Overfields. Each of the parties to this appeal interprets the intent of this affidavit in opposite ways. The appellant is unyielding in her position that it was her understanding that the affidavit was intended to transfer only temporary custody of her children until she was in better financial and physical condition to resume a normal living arrangement with her children under a single roof. On the other hand, the Overfields contend that it was the appellant's intention to permanently transfer custody of her two children.[3]

3. The critical language of the affidavit is as follows:

AFFIDAVIT

\* \* \* \* \* \*

4. That I am unable to physically and financially care, maintain and provide for said children, and believe it to be in their bests [sic] interest[s] to turn custody over to their grandparents, James William Overfield and Shirley V. Overfield.

5. That it is known to me that the natural father is also unable to physically and financially care, maintain and provide for said children, and further is believed to be an unfit parent.

6. That I believe it is in the best interests of said minor children to allow for the physical care, custody and control to be given to the grandparents, James William Overfield and Shirley V. Overfield.

FURTHER AFFIANT SAETH NAUGHT.

/s/ Tammy Lynn Collins

TAMMY LYNN COLLINS

Approximately seven days after the affidavit was executed and delivered by the appellant, the Overfields filed a petition in the Circuit Court of Monongalia County requesting relief in the form of an order granting the Overfields permanent custody of the two children. It is significant to note that (1) the affidavit executed and delivered by the appellant was attached to the petition as a basis for the requested relief; and (2) the Overfields failed to serve the petition or notice of hearing on said petition upon the appellant. The appellant was unaware of the filing of the petition, the hearing upon the petition, or the order entered following the hearing on the petition until one year later when she informed her parents that she was physically able to resume a normal living relationship with her children. From this petition for custody evolved an order entered by the Circuit Court of Monongalia County approving the findings and conclusions of the family law master granting permanent custody of the children to the Overfields. This order was entered June 24, 1991, and it erroneously found that the appellant was served with the petition and notice of hearing on the petition.

While the appellant was recovering from her spinal injury, she saw her children frequently, and after fully recovering she sought to regain custody of her children from her parents. It was only at this time that the appellant realized that her parents had used the affidavit prepared by their attorney and signed by her as a basis to gain permanent custody of the children.

In July 1992, the appellant, without the assistance of a lawyer, filed a petition to regain custody of her children. By Order entered July 27, 1993, the Circuit Court of Monongalia County denied the appellant's petition to regain custody of her children and adopted the findings and conclusions of the family law master, including:

Respondent Tammy Collins, by writing and by action, gave physical custody of the children to the Petitioners. Respondent Tammy Collins testified she understood the arrangement to be temporary; that she signed the affidavit based upon what was told to her; that she was pressured to sign the document by her mother, a Petitioner herein.

Respondent Tammy Collins has had one and a half years of college, edited articles in [sic] paper for the West Virginia University Information Office, was thirty[-]three at the time of the execution o[sic] the affidavit. The Master finds the document to be clear and unequivocal, and not the result of duress or fraud.

The conclusion of the family law master, which was adopted by the circuit court, was that because permanent custody of the children had been granted to the Overfields, it was incumbent upon the appellant to show that a return of custody would materially promote the welfare and best interests of the children, a burden that the appellant failed to meet.

In December 1993, James Overfield became seriously ill and was hospitalized in February 1994, dying shortly thereafter. At that time, the appellant once again attempted to obtain a change of custody, only this time she was represented by a lawyer. On December 6, 1994, the Circuit Court of Monongalia County entered an order affirming the family law master's recommendation that custody should not be changed in favor of the appellant, with the circuit court specifically finding that the appellant "had previously given [ ] custody to [the Overfields] as evidenced by the affidavit presented in this matter."

It is from this order that the appellant appeals.

## II.

## STANDARD OF REVIEW

As is our custom, we begin each opinion by stating the standard of appellate review of the circuit court's decision. "The exercise of discretion by a trial court in awarding custody of a minor child will not be

Taken, subscribed and sworn to before me this 30th day of April, 1991. My commission expires: 3/1/93

/s/ Christina M. Faris
NOTARY PUBLIC

disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal." Syllabus Point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975). In reviewing a challenge to findings and conclusions made by a family law master that were adopted by a circuit court, the underlying factual findings are reviewed under a clearly erroneous standard, and questions of law and statutory interpretations are reviewed *de novo.* Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

### III.

### DISCUSSION

#### A.

*Initial Order Granting Permanent Custody to Overfields*

▪ Child custody battles are the closest modern Americans come to real tragedy—a playing out of conflict, commonly between members of the same family, that reveals what is thought to be the best intentions of the combatants, but in the end challenges the very concept of hope. The hectic edge of this conflict is manifest in this case where the judicial system is called upon to unravel an internecine battle involving two generations of the Overfield family who undoubtedly believe that they are doing what is best for the hopes and dreams of the third generation. It is the third generation, Aaron and Ashley Collins, that we in the judicial family are committed to protect.

We first must address the Order entered June 24, 1991, which granted "full care, custody and control of the minor children born to the respondents herein, namely Aaron Bradford Collins and Ashley Brook Collins" to James W. Overfield and Shirley V. Overfield. It is an inaccuracy contained in this order that is at the core of many of the difficulties surrounding the question of whether the appellant transferred permanent or temporary custody of her children to her parents in April 1991.

▪ The Order of June 24, 1991 recites that "[t]his action was commenced by the filing of the petition on May 7, 1991, and the issuance of a summons to both respondents [the appellant and Marc Anthony Collins] which neither filed a response or answer." This finding is clearly erroneous.[4] The certificate of service attached to the petition for custody and notice of hearing on that petition was served only on Marc Anthony Collins and not the appellant.

Had the trial court noticed this deficiency in the service of the petition and the notice of hearing, the appellant would have had an opportunity to be heard as to what it was she thought she was doing when she signed the affidavit on April 30, 1991. What then, is the legal effect of the absence of any adversarial proceeding upon the Overfields' initial attempt to obtain custody immediately following the execution and delivery of the document that attempted to effect a transfer of custody?

▪ This Court has long recognized that the right of a natural parent to his or her infant child is paramount to that of any other person.

In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; *it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.*

Syllabus Point 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973) (emphasis added).

▪ In determining whether a judicial act violates the due process clause in W.Va. Const. art. III, § 10, the threshold question is whether the act implicates a liberty interest. Syllabus Point 1, *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 474 S.E.2d 554

4. Clearly erroneous is defined as "when ... the reviewing court ... is left with the definite and firm conviction that a mistake has been committed." Syllabus Point 1, in part, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

(1996). Beginning with *In re Willis,* West Virginia recognized that liberty, within the meaning of the Due Process Clause, embraces the rights of parenthood. *State ex rel. Roy Allen S. v. Stone,* 196 W.Va. at 631, 474 S.E.2d at 561. Given our recognition that the appellant, as a natural parent, acquires a liberty interest in maintaining a substantial parental relationship with her children vis-à-vis third parties, the Circuit Court of Monongalia County had no right to deprive her of that interest without due process of law. W. Va. Const. art. III, § 10 provides:

> No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.

■ The Due Process Clause is a commitment by the government to assure that no one will be arbitrarily deprived of a liberty interest unless the government provides that individual with a fair decision-making process, including the right to receive written notice of the attempt to affect that liberty interest, the right to present evidence, and the right to obtain a decision from a neutral, detached person or tribunal.

■ We hold that any attempt by a non-parent to judicially change the care and custody of a child from a natural parent must precede that attempt with: (1) the filing of a petition setting forth all of the reasons why the change of custody is required; and (2) the service of that petition, together with a reasonable notice as to the time and place that petition will be heard. Following the filing and service of the petition and notice of hearing upon that petition, the natural parents whose rights are being affected shall have the right to: (1) present evidence as to the reasons why custody should not be changed; and (2) obtain a decision from a neutral, detached person or tribunal. *Cf., In*

*re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973) (holding that in an abuse and neglect proceeding, W. Va.Code 49–6–2 and the Due Process Clauses of the West Virginia and United States Constitutions prohibit the termination of parental rights without notice and the opportunity for a meaningful hearing).

■ It is obvious that the appellant was not afforded any of these fundamental ingredients of a fair decision-making process prior to the entry of the order that granted a permanent change of custody from the appellant to her parents. The seminal order entered on the 24th day of June, 1991 is, therefore, void. *Harloe v. Harloe,* 129 W.Va. 1, 4–5, 38 S.E.2d 362, 364 (1946); *see also Smith v. Smith,* 140 W.Va. 298, 304–05, 83 S.E.2d 923, 927 (1954).[5]

■ Because this order began a series of petitions filed by the appellant to regain custody that was permanently removed without a fair decision-making process, the dynamic of each of the subsequent petitions changed. Because it was determined that the Overfields had permanent custody of the children, the family law master and circuit court in all subsequent attempts to change that custodial relationship required the appellant to carry the burden of proof imposed upon a parent who has permanently transferred custody to a third person which demands that a parent seeking to regain custody of a child must prove that such a change of custody will materially promote the moral and physical welfare of that child. *See State ex rel. Harmon v. Utterback,* 144 W.Va. 419, 108 S.E.2d 521 (1959).

■ The appellant contends in this Court that had she been given the opportunity to appear before the family law master at the time the initial petition was filed by the appellee, she would have informed the family

---

5. We anticipate that some might question our authority to determine that the June 24, 1991 order is void, when the appellant's appeal technically is directed to the December 6, 1994 order. Our case law is clear: a court that enters a judgment where there has been insufficient service of process is without jurisdiction to enter said judgment, "and a void judgment or decree is a mere nullity and may be attacked at any time." *Dierkes v. Dierkes,* 165 W.Va. 425, 430, 268 S.E.2d 142, 145 (1980). *See* Syllabus Point 7, *Aldrich v. Aldrich,* 147 W.Va. 269, 127 S.E.2d

385 (1962) *judgment rev'd on other grounds by* 378 U.S. 540, 84 S.Ct. 1687, 12 L.Ed.2d 1020 (1964); Syllabus Point 1, *Cable v. Cable* 132 W.Va. 620, 53 S.E.2d 637 (1949). *See also Desmond v. Brennan,* 639 A.2d 1351 (R.I.1994); *In re Schmidt,* 436 N.W.2d 99 (Minn.1989); *In re Hall,* 173 Mont. 142, 566 P.2d 401 (1977); *Smith v. Hatgimisios,* 233 Ga. 354, 211 S.E.2d 306 (1974), *aff'g* 229 Ga. 475, 192 S.E.2d 270 (1972); *Shaddrix v. Womack,* 231 Ga. 628, 203 S.E.2d 225 (1974); *Webster v. Clanton,* 259 S.C. 387, 192 S.E.2d 214 (1972).

law master and consequently the circuit court, that she had entered into the initial custody arrangement in order to temporarily provide her children with a more secure financial environment until she had fully recovered from her debilitating injuries. This contention, argues the appellant, requires the application of our holding in *McCartney v. Coberly:*

> When a parent transfers temporary custody of a child to a third person, the parent may reclaim custody without showing that the change of custody will materially promote the moral and physical welfare of the child.

Syllabus Point 2, *McCartney v. Coberly,* 250 S.E.2d 777 (W.Va.1978).

Our jurisprudence regarding child custody matters has recognized that the dichotomy of permanent and temporary custody shapes the nature of the proof required to regain custody. Because the predicate order vesting permanent custody in the Overfields is void, the appellant has been denied the opportunity to attempt to regain the custody of her children with proof adapted to a temporary rather than a permanent transfer of custody. Therefore, we must reverse the decision of the Circuit Court of Monongalia County and remand this case for further proceedings. In doing so, we take this opportunity to reexamine our legal standards relating to the burden and quantum of proof when a natural parent requests the return of a child after transferring either temporary or permanent custody of that child to a third person, as well as a reexamination of the formalities of a voluntary transfer of custody of a child from a natural parent to a third person.

## B.

### *Regaining Custody Following Permanent or Temporary Transfer of Custody to a Third Person* [6]

█ We are constantly vigilant in recognizing that the goal of every decision relating to custody of children is to advance the welfare of the child. This responsibility has been translated in what has become a mantra of this Court that in a contest involving the custody of a child, the welfare of that child is the polar star by which the discretion of this Court will be guided. *State ex rel. Harmon v. Utterback,* 144 W.Va. at 419, 428, 108 S.E.2d at 521, 527. In the shadow of this star is the concept that an unoffending natural parent will not be deprived of the custody of her child. We recognized in *Hammack v. Wise,* 158 W.Va. 343, 347, 211 S.E.2d 118, 121 (1975), that:

> Although this Court adheres to the "polar star" concept in child custody cases, it has refused to apply it in cases where the parents have not abandoned the child or have in no manner been proved to be unfit to have the care and custody of such child.

We established this general rule in the Syllabus of *State ex rel. Kiger v. Hancock,* 153 W.Va. 404, 168 S.E.2d 798 (1969):

> A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her child will be recognized and enforced by the courts.

We strayed from protecting the rights of a natural parent who has relinquished custody to a third person in *Lemley v. Barr,* 176 W.Va. 378, 343 S.E.2d 101 (1986), where we recognized that the equitable rights of a child could be placed above the legal rights of a parent, and commented:

> The day is long past in this State, if it had ever been, when the rights of a parent

---

**6.** When we speak in this opinion about the custody of children, we are careful to distinguish between a transfer of custody and the relinquishment of a child. Custody speaks in terms of immediate care, control and maintenance of a child and one can transfer custody without forsaking a right to custody of the child. *See*

*Black's Law Dictionary,* 385 (6th ed.1990). Relinquishment, which is not the concept embraced in this opinion, speaks in terms of the abandonment or renunciation of a right to custody of a child which is generally a prelude to the adoption of a child. *See Id.* at 1292.

to the custody of his or her child, where the extraordinary circumstances are present, would be enforced inexorably, contrary to the best interest of the child, on the theory solely of an absolute legal right. Instead, in the extraordinary circumstance, when there is a conflict, the best interest of the child has always been regarded as superior to the right of parental custody. Indeed, analysis of the cases reveals a shifting of emphasis rather than a remaking of substance. This shifting reflects more the modern principle that a child is a person, and not a subperson over whom the parent has absolute possessory interest. A child has rights too, some of which are of constitutional magnitude.

*Lemley v. Barr,* 176 W.Va. at 386, 343 S.E.2d at 109 (citations omitted).

Following *Lemley v. Barr,* we decided *In the Interest of Brandon L.E.,* 183 W.Va. 113, 394 S.E.2d 515 (1990), in which we modified a Florida custody decree that required that a custodial grandmother transfer custody of a child to his father with whom he had little contact. We wrote:

To protect the equitable rights of a child in this situation, the child's environment should not be disturbed without a clear showing of significant benefit to him, notwithstanding the parent's assertion of a legal right to the child.

*In the Interest of Brandon L.E.,* 183 W.Va. at 121, 394 S.E.2d at 523.

We believe the time has come to reformulate the legal standards guiding those extraordinary cases where a natural parent, following the transfer of either temporary or permanent custody of a child to a third person, attempts to regain custody of that child. We look to our past decisions to map the future.

■■■■ A synthesis of our decisions provides a logical foundation to modify our jurisprudence relating to the burden and quantum of proof required when a natural parent attempts to regain custody of a child after either a transfer of temporary or permanent custody to a third person. *In the Interest of Brandon L.E.,* 183 W.Va. 113, 394 S.E.2d 515 (1990) (holding that a child's environment should not be disturbed without a clear showing of significant benefit to the child); *In re Cottrill,* 176 W.Va. 529, 346 S.E.2d 47 (1986) (per curiam) (reiterating that a fit parent has the natural right to the custody of their infant child unless permanently transferred or relinquished); *McCartney v. Coberly,* 250 S.E.2d 777 (W.Va.1978) (holding that a parent seeking to regain custody after transferring temporary custody need only prove that the parent is fit, without showing that the change of custody will promote the welfare of the child); *State ex rel. Harmon v. Utterback,* 144 W.Va. 419, 108 S.E.2d 521 (1959) (stating that the welfare of a child is the polar star by which the discretion of this Court will be guided; also, a parent seeking to regain custody after transferring permanent custody must prove a change of custody will promote the welfare of the child). We fashion the rule as: when a natural parent transfers temporary custody of their child to a third person and thereafter seeks to regain custody of that child, the burden of proof shall be upon that parent to prove by clear and convincing evidence that he or she is fit; thereafter the burden of proof shall shift to the third party to prove by clear and convincing evidence that the child's environment should not be disturbed because to do so would constitute a significant detriment to the child notwithstanding the natural parent's assertion of a legal right to the child.[7] When a natural parent transfers permanent custody of his or her child to a third person and thereafter attempts to regain custody of that child, the burden of proof shall rest exclusively upon the parent attempting to regain custody of his or her child by proving with clear and convincing evidence (1) that he or she is fit; and (2) that a transfer of custody so as to disturb the child's existing environment would constitute a significant benefit to the child.

---

7. We will not attempt to predict responses for every factual construct. However, in those cases where the custodial change is temporary, a third party does not sustain its burden of proof merely by demonstrating that they might possibly furnish the child a better home or better care. *See State Dep't of Pub. Assistance v. Pettrey,* 141 W.Va. 719, 725, 92 S.E.2d 917, 921 (1956); *see also Hammack v. Wise,* 158 W.Va. 343, 347–48, 211 S.E.2d 118, 121 (1975).

The reformulation of the legal standards guiding the attempt to regain the custody of a child maintains the delicate balance between the best interests and equitable rights of a child and the rights of a natural parent to custody of the child vis-à-vis any other person. The reformulation of these legal standards also recognizes the shifting emphasis to reflect the "modern principle that a child is a person, and not a subperson over whom the parent has an absolute possessory interest. A child has rights too, some of which are of a constitutional magnitude." *Bennett v. Jeffreys*, 40 N.Y.2d 543, 387 N.Y.S.2d 821, 824, 356 N.E.2d 277, 281 (1976). *Lemley v. Barr*, 176 W.Va. 378, 386, 343 S.E.2d 101, 109 (1986) (quoting *Bennett v. Jeffreys*, 40 N.Y.2d 543, 546, 387 N.Y.S.2d 821, 824, 356 N.E.2d 277, 281 (1976)). The reformulation of these legal standards makes the centerpiece of those extraordinary circumstances when there is a conflict between a child and the adults competing for the custody of that child, a recognition that the best interests of the child must be regarded as superior to the right of parental custody.

Finally, a reformulation of the legal standards relating to a natural parent's attempt to regain custody of the child is particularly apposite in the factual pattern of this case, where nearly five years have passed since the children were placed in the custody of the Overfields. The reformulation standard which shall be applied in this case will take into account the fact that the children have resided with their grandmother for a significant period of time, such that the grandmother with whom the children have resided may serve as the children's psychological parent.[8]

What we accomplish in this decision is a recognition that whatever the status of the custodial transfer, be it temporary or permanent, any change in that custodial status will concentrate on whether the change will enure to the benefit of the child. To the extent

that our decisions in *State ex rel. Harmon v. Utterback*, 144 W.Va. 419, 108 S.E.2d 521 (1959) and *McCartney v. Coberly*, 250 S.E.2d 777 (W.Va.1978), relating to the burden and quantum of proof in a proceeding by a natural parent to regain custody of a child either permanently or temporarily transferred to a third party, are inconsistent with this opinion, they are expressly overruled.

### C.

### *Formalities of the Transfer of Temporary or Permanent Custody*

Much of the controversy in this case centers upon the language of the document prepared by the lawyer for the Overfields. The affidavit executed and delivered by the appellant did transfer custody of her children to her parents, but it also created in its wake a torrent of uncertainty and contention as to the duration of the custodial change.

In order to avoid such uncertainty and ambiguity in the future, a few simple rules can guide the bench and bar of this State. If a natural parent intends to voluntarily transfer permanent custody of a child to a third person, then the document effecting that transfer should expressly provide that it is the intention of the parent to permanently transfer the custody of the child to the third person.

If a natural parent intends to voluntarily transfer temporary custody of a child to a third person, then the document effecting the transfer should expressly provide that it is the intention of the parent to temporarily transfer custody to the third person.

In the unlikelihood that the scrivener of a document voluntarily transferring the custody of a child between a parent and a third person fails to express any intention as to the duration of the custodial change, it shall be presumed that the transfer is tempo-

---

**8.** The term "psychological parent" is defined in the model child placement statute proposed in *Beyond the Best Interests of the Child:*

A psychological parent is one who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills the child's psychological needs for a parent, as well as the child's physical needs.

The psychological parent may be a biological, adoptive, foster, or common-law parent, or any other person. There is no presumption in favor of any of these after the initial assignment as birth.

Joseph Goldstein et al., *Beyond the Best Interests of the Child* 98 (1979).

rary, and the burden of proof shall be upon the third person to prove by clear and convincing evidence, either intrinsic or extrinsic, that it was the intention of the parent to transfer permanent custody of the child to the third person.[9]

## IV.

## DEVELOPMENT ON REMAND

We are mindful of the emotional bruising that the grandmother, mother, and children have suffered over these past many years. No matter how creative and sensitive the family law master and trial judge may be in drawing a plan for the future relationship of these parties, the happiness and emotional security of these children must rely heavily on the hearts and minds of the two adults. As we have said in *Honaker v. Burnside,* 182 W.Va. 448, 453, 388 S.E.2d 322, 326–27 (1989): "The work that lies ahead for both [adults] is not without inconvenience and sacrifice on both sides. Their energies should not be directed even partially at any continued rancor at one another, but must be fully directed at developing compassion and understanding for one another, as well as showing love and sensitivity to the children's feelings at a difficult time in all their lives."

Regardless of who ultimately is awarded custody of these children, the children should be able to continue in a caring and loving relationship with the person who is not awarded custody so as not to interrupt the continuity and the bonding that has occurred over these past many years.

Finally, we would require that the Court appoint a qualified guardian ad litem to represent the interests of the children to assure that their feelings, hopes and aspirations are fully protected. *See* W. Va. R. Civ. P. 17(c); *In the Matter of Lindsey C.,* 196 W.Va. 395, 473 S.E.2d 110 (1995) (requiring appointment of a guardian ad litem for a parent in an abuse and neglect proceeding who was involuntarily hospitalized for mental illness); *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193

(1996) (recommending an appointment of a guardian ad litem in a child custody case).

## V.

## CONCLUSION

The decision of the Circuit Court of Monongalia County denying the appellant's petition to regain custody shall be reversed, and this matter is remanded to the Circuit Court of Monongalia County for further proceedings consistent with the principles announced in this opinion.

Reversed and remanded.

---

9. A critical element of proof demarcating temporary custody and permanent custody is the length of time of the custodial change. The amount of time which passes after a transfer of custody, together with all the other circumstances, shall be an important factor in determining whether such transfer was intended to be temporary or permanent.