652 S.E.2d 490

## In re VISITATION AND CUSTODY OF SENTURI N.S.V.

### No. 33334.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 9, 2007.
Decided Oct. 25, 2007.

Hoyt Glazer, Legal Aid of West Virginia; David Lockwood, Lockwood & Lockwood, Huntington, WV, for Appellant, Misty C.V.

Steven M. Bragg, Bragg Salmons, PLLC, Huntington, WV, for Appellees, Christopher and Tanya F.

PER CURIAM:

The appellant herein, Misty C.V.[1] (hereinafter "Misty"), appeals from an order entered October 30, 2006, by the Circuit Court of Cabell County. By that order, the circuit court affirmed an earlier ruling by the Family Court of Cabell County, entered June 23, 2006, wherein the family court determined the appellees herein, Christopher and Tanya F. (hereinafter "Christopher" and "Tanya"), to be the "psychological co-parents" of the minor child involved in these proceedings, Senturi N.S.V. (hereinafter "Senturi"). The circuit court also affirmed the family court's ruling that Christopher and Tanya had a "shared parenting arrangement" with Misty vis-a-vis Senturi. On appeal to this Court, Misty contends that Christopher and Tanya are not the psychological co-parents of Senturi and that she did not enter into a shared parenting arrangement with them. Upon a review of the parties' arguments, the pertinent authorities, and the record presented for our consideration, we reverse the October 30, 2006, order of the Circuit Court of Cabell County and restore Misty's full custodial rights to her daughter, Senturi.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The child at the center of the instant custody dispute, Senturi, was born on March 2, 2004. Thereafter, on April 5, 2004, Senturi's mother, Misty, filed a pro se "Petition for Support/Allocation of Custodial Responsibility" in the Family Court of Cabell County against Senturi's father, Joshua. At the same time, Misty submitted a "Parenting Plan" for the court's approval. By order of the family court entered June 8, 2004, custody of Senturi was awarded to Misty and visitation on Wednesdays and "at other agreeable times" was awarded to Joshua. This order was not appealed.

Subsequently, Misty filed a pro se "Petition for Modification" on April 29, 2005, to establish Joshua's child support obligation and to substitute Fridays for Wednesdays as Joshua's established weekly visitation day. The West Virginia Department of Health and Human Resources (hereinafter "the DHHR") filed a corresponding action against Joshua to collect child support, which action was consolidated with the modification sought by Misty. By order entered August 17, 2005, the family court found Joshua to be capable of paying child support at the rate of $197.00 per month and determined that he was in arrears from April 1, 2004, to February 28, 2005.[2] Accordingly, Joshua was ordered to pay $1,728 in reimbursement child support;[3] $212.39 in child support arrearages;[4] and, beginning August 1, 2005, $197 per month in child support for Senturi. In the above-referenced order, the family court also ordered the parties "to notify the Bureau for Child Support Enforcement ... in writing within seven (7) days of any change in any of the following: ... residential and mailing address[.]"[5] The family court continued custody of Senturi with Misty.

1. Due to the sensitive nature of the facts involved in this case, we will adhere to our usual practice in such matters and refer to the parties by their first names and last initials only. See In re Clifford K., 217 W.Va. 625, 630 n. 1, 619 S.E.2d 138, 143 n. 1 (2005), and cases cited therein.

2. In its order, the family court referenced an earlier order it had entered on April 7, 2004, in which it directed Joshua to pay child support of $188.00 per month. The family court found Joshua to be "in arrears in the principal amount of One Hundred Seventy-Two and 11/100 ($172.11) and interest amount of Forty and 28/100 ($40.28) from April 1, 2004 to February 28, 2005 for child support."

3. The period covered by the award of reimbursement child support was "from November 1, 2004 to July 31, 2005."

4. See supra note 2.

5. A similar notification provision was contained in the "Parenting Plan" Misty filed on April 5, 2004, which required "[t]he parents will always let each other know their current residence addresses [and] mailing addresses ... and will notify each other within 24 hours of any changes in these matters."

On February 27, 2006, Misty filed a "Notice of Relocation," pursuant to Senturi's court-ordered parenting plan, in which Misty advised that she planned to move to Corpus Christi, Texas, with Senturi, on or after March 17, 2006, in order to live closer to her extended family, return to school, and pursue employment opportunities. In response to this notice, Joshua filed, on March 7, 2006, a "Motion for Ex Parte Order for Emergency Temporary Custody[;] Respondent's and Intervening Petitioners' Verified Petition for Custody[;] and Response to Notice of Relocation," whereby Joshua and the intervenors, Christopher and Tanya,[6] sought Senturi's exclusive custody. To support their request for relief, Joshua, Christopher, and Tanya alleged that Senturi had been living with Christopher and Tanya "for the past fourteen months ... with only limited visitation with the Petitioner [Misty]"; questioned Misty's fitness to retain Senturi's custody; and asserted that Senturi's best interests necessitated transferring custody to Christopher and Tanya. By order entered March 7, 2006, the family court granted the ex parte relief requested, awarding the temporary custody of Senturi to Joshua, Christopher, and Tanya, and placing Senturi in the care of Christopher and Tanya. There is no indication that the family court conducted an inquiry as to Misty's fitness, and the family court, in its order, did not grant Misty any visitation with Senturi.

On March 13, 2006, Misty responded to the ex parte petition, denying the allegations that she was unfit and arguing that the intervenors, Christopher and Tanya, lacked standing. Also on March 13, 2006, Misty filed a "Motion for Ex Parte Order to Set Aside March 7, 2006 Ex Parte Order" wherein she stated that Tanya was Senturi's babysitter and that Tanya had received payments for such services from the DHHR through the Link Child Care Resource and Referral Agency.[7] Following a hearing on Misty's motion, the family court, by temporary order entered March 20, 2006, continued custody of Senturi with the intervenors, but awarded Misty two hours of supervised visitation with Senturi on Monday, Wednesday, Friday, and Saturday.

By final order entered June 22, 2006,[8] the family court designated Misty as Senturi's primary residential parent. However, the family court further ordered Misty to share parenting time with Christopher and Tanya because, as found by the family court, Christopher and Tanya have a "shared parenting arrangement with Misty" and are Senturi's "psychological co-parents." Misty appealed this order to the Circuit Court of Cabell County.[9] The circuit court affirmed the family court's decision by order entered October 30, 2006. From these rulings, Misty now appeals to this Court.

## II.

### STANDARD OF REVIEW

On appeal to this Court, Misty challenges the correctness of the circuit court's order. We have held that,

[i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an

---

6. Christopher and Tanya are married to each other, and Tanya is a cousin of Senturi's father, Joshua. Beginning on Christmas Day, 2004, Christopher and Tanya have provided care for Senturi for various periods of time. Misty characterizes Christopher and Tanya as Senturi's babysitters.

7. Although they admit that they received payments through Link in the amount of $2,936.50 for the care giving services they provided to Senturi, Christopher and Tanya aver that they have since reimbursed the DHHR for the entire amount of such payments.

8. The family court subsequently entered a corrected order on June 28, 2006, to correct the spelling of Christopher's first name.

9. During the pendency of Misty's appeal to the Circuit Court of Cabell County, she also sought extraordinary relief from this Court to regain custody of her daughter. We denied, without prejudice, Misty's request for extraordinary relief by order entered August 31, 2006.

abuse of discretion standard. We review questions of law *de novo.*

Syl., *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004). Guided by these standards, we now consider the parties' arguments.

## III.

## DISCUSSION

This case comes before us on Misty's appeal from the circuit court's order affirming the family court's findings that (1) Misty had entered a shared parenting arrangement with Christopher and Tanya and (2) Christopher and Tanya are psychological co-parents of Senturi. The family court made both of these determinations in order to find that Christopher and Tanya had standing to participate in these proceedings. *See generally* W. Va.Code § 48–9–103 (2001) (Repl. Vol. 2004). This Court is gravely concerned, however, by both the failure of the lower tribunal to follow the established procedure for addressing custodial concerns in the context of a relocation notice and by the dangerous precedent set by awarding relief to persons who did not have standing to intervene in these proceedings in the first instance.

▮ During the initial proceedings commenced below by Misty in order to obtain child support from Senturi's father, Joshua, and a determination of the child's custody, Joshua was ordered to pay child support, Misty was awarded custody of Senturi, and Joshua was awarded visitation with Senturi. In accordance with this ruling, the family court adopted a parenting plan that included a provision requiring the parties to notify each other of changes to their residential or mailing addresses.[10] *See* W. Va.Code § 48–9–205(d) (2001) (Repl. Vol. 2004) (providing that "[a] parenting plan may, at the court's discretion, contain provisions that address matters that are expected to arise in the event of a party's relocation ...."). *See also* W. Va.Code § 48–1–235.4 (2001) (Repl. Vol. 2004) (" 'Permanent parenting plan' means a plan for parenting a child that is incorporated into a final order or subsequent modification order in a domestic relations action.

The plan principally establishes, but is not limited to, the allocation of custodial responsibility and significant decision-making responsibility and provisions for resolution of subsequent disputes between the parents."). Consistent with this portion of the parenting plan, Misty filed a "Notice of Relocation" to inform Joshua of her intent to relocate to Texas. Pursuant to W. Va.Code § 48–9–403(b) (2001) (Repl. Vol. 2004), Misty was required to provide such notice only "to any other parent with responsibility under the same parenting plan"; here, that other parent is Joshua because only Misty and Joshua are parties to Senturi's parenting plan. Insofar as Misty's move to Texas would have constituted a substantial change in circumstances because it would have hindered Joshua's ability to maintain his visitation with Senturi, W. Va.Code § 48–9–403(a), the family court was required to "modify the parenting plan in accordance with the child's best interests" and in consideration of whether such relocation is "in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose," W. Va.Code § 48–9–403(d)(1). This, however, is not the inquiry undertaken by the family court in the case *sub judice.*

▮ Rather than evaluating the legitimacy and reasonableness of Misty's contemplated move, the family court instead entertained a "Motion for Ex Parte Order for Emergency Temporary Custody[;] Respondent's and Intervening Petitioners' Verified Petition for Custody[;] and Response to Notice of Relocation" filed by Joshua, who was joined by Christopher and Tanya as intervenors. While a change of custody to the other parent is certainly not outside the realm of possible relief that may be granted in response to a custodial parent's relocation, it clearly is not contemplated as the immediate knee-jerk response given the Legislature's specific admonition that "[t]he court shall attempt to minimize impairment to a parent-child relationship caused by a parent's relocation," W. Va.Code § 48–9–403(d)(4). More importantly, however, is the fact that the relief the family court awarded in response

---

**10.** *See* note 5, *supra.*

to Misty's relocation notice did not "attempt to minimize impairment to a parent-child relationship," W. Va.Code § 48–9–403(d)(4); instead, the family court's resolution completely, albeit temporarily, severed Misty's custodial relationship with her child and awarded Senturi's temporary custody to persons other than the child's other parent, her father Joshua. Finally, and most egregiously of all, those other persons, Christopher and Tanya, did not have standing to seek Senturi's custody or to intervene in such proceedings.

Persons who are accorded standing to participate in proceedings affecting the custody of minor children in cases such as the instant appeal where the child's parents are not married to each other are specifically enumerated by statute. W. Va.Code § 48–9–103 (2001) (Repl. Vol. 2004) directs that

(a) Persons who have a right to be notified of and participate as a party in an action filed by another are:

(1) A legal parent of the child, as defined in section 1–232 [§ 48–1–232] of this chapter;

(2) An adult allocated custodial responsibility or decision-making responsibility under a parenting plan regarding the child that is then in effect; or

(3) Persons who were parties to a prior order establishing custody and visitation, or who, under a parenting plan, were allocated custodial responsibility or decision-making responsibility.

(b) In exceptional cases the court may, in its discretion, grant permission to intervene to other persons or public agencies whose participation in the proceedings under this article it determines is likely to serve the child's best interests. The court may place limitations on participation by the intervening party as the court determines to be appropriate. Such persons or public agencies do not have standing to initiate an action under this article.

Applying this statute to the parties presently before the Court, it is undisputed that Misty and Joshua are the legal parents of Senturi. *See* W. Va.Code § 48–9–103(a)(1). *See also* Syl. pt. 1, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005) ("Pursuant to W. Va.Code § 48–1–232 (2001) (Repl. Vol. 2004), a 'legal parent' is 'an individual defined as a parent, by law, on the basis of biological relationship, presumed biological relationship, legal adoption or other recognized grounds.' The phrase 'other recognized grounds' refers to those individuals or entities who have been formally accorded parental status or the functional equivalent thereof by way of statute or judicial decree. Such parental status is comparable to the rights and responsibilities of a biological or adoptive parent and includes, but is not limited to, the right to care, control, and custody of the minor child; the right to consent or object to the child's adoption by another person; and the duty to support the child.").

Moreover, it is apparent from the record in this case that the only person who was "allocated custodial responsibility or decision-making responsibility" of Senturi "under a parenting plan regarding the child that is then in effect" is Misty. *See* W. Va.Code § 48–9–103(a)(2); W. Va.Code § 48–1–235.4. Likewise, only Misty and Joshua are "[p]ersons who were parties to a prior order establishing custody and visitation, or who, under a parenting plan, were allocated custodial responsibility or decision-making responsibility." W. Va.Code § 48–9–103(a)(3). Thus, the only way in which Christopher and Tanya could have been accorded standing to participate in the proceedings below is to find that the instant matter constitutes an "exceptional case[ ]" as contemplated by W. Va.Code § 48–9–103(b).

Ostensibly, the family court determined both that Christopher and Tanya had a shared parenting arrangement with Misty and that they were Senturi's psychological co-parents in order to accord them standing pursuant to W. Va.Code § 48–9–103(a)(2) and W. Va.Code § 48–9–103(b). Although the family court determined that Christopher and Tanya had standing on these grounds, and the circuit court affirmed this ruling, such a determination was erroneous. First, as we observed above, there was in effect a parenting plan regarding Senturi that had been entered by the family court in the course of Misty's initial action seeking custo-

dial allocation and child support. Only Misty and Joshua are parties to this parenting plan; Christopher and Tanya are not. *See* W. Va.Code § 48-1-235.4. Moreover, Christopher and Tanya contend that Misty entrusted Senturi to their care, frequently for visits spanning several days, and that they provided the child with food, clothing, and shelter while they were caring for her. Thus, Christopher and Tanya claim that these facts demonstrate that they had a shared parenting arrangement with Misty although they concede that Misty never executed any written documents transferring permanent or temporary custody of Senturi to them. Misty denies that she ever entered into a shared parenting arrangement with Christopher and Tanya and characterizes their care of Senturi as that typically provided by babysitters. As for Senturi's extended visits with Christopher and Tanya, Misty claims that because Christopher and Tanya are part of Joshua's extended family, she wanted to allow her child to develop a relationship with that part of her family by visiting with them for extended periods of time.

■ While we appreciate that Christopher and Tanya have provided significant care for Senturi and have attended to her needs during these periods of time, the record evidence before us simply does not support the family court's conclusion that Misty had entered into a shared parenting arrangement with Christopher and Tanya. The right of a parent to his/her child's custody is scrupulously protected.

In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. pt. 1, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973).

■ In recognition of the importance of a parent's right to the custody of his/her

child, we held in *Overfield v. Collins,* 199 W.Va. 27, 483 S.E.2d 27 (1996), that a parent wishing to transfer the custody of his/her child to a third-party must execute a written document memorializing this intent. Such a writing is imperative whether the custodial transfer is contemplated as being temporary or permanent in nature. Thus, "[i]f a natural parent intends to voluntarily transfer temporary custody of a child to a third person, then the document effecting the transfer should expressly provide that it is the intention of the parent to temporarily transfer custody to the third person." Syl. pt. 5, *Overfield v. Collins,* 199 W.Va. 27, 483 S.E.2d 27. Likewise, "[i]f a natural parent intends to voluntarily transfer permanent custody of a child to a third person, then the document effecting that transfer should expressly provide that it is the intention of the parent to permanently transfer the custody of the child to the third person." Syl. pt. 4, *Overfield,* 199 W.Va. 27, 483 S.E.2d 27.

Because there is no writing in the case *sub judice* reflecting Misty's intent to transfer either the temporary or the permanent custody of Senturi to Christopher and Tanya, we find no basis for upholding the family court's finding of the existence of a shared parenting arrangement [11] or according standing to Christopher and Tanya on this basis. *See* W. Va.Code § 48-9-103(a)(2). Were we to allow the lower court's ruling to stand, it goes without saying that the potential ramifications would be crippling to the parents of children in this State. Virtually any parent who must rely upon child care, whether to allow the parent to work, attend school, care for elderly parents, visit the doctor, or for any other reason, could potentially face a challenge from the child's care giver asserting the existence of a shared parenting arrangement despite the absence of any writing evincing such an intent by the parent. We simply cannot condone a ruling that would permit such pervasive interference with parents' custodial rights. Accordingly, we reverse the circuit court's ruling upholding the family court's decision in this regard.

---

11. Our conclusion that Misty did not intend to transfer Senturi's custody to Christopher and Tanya is also consistent with her retention of custody of her two older children during this period of time.

Additionally, the family court accorded standing to Christopher and Tanya because it determined that they are Senturi's psychological co-parents, and, as such, "exceptional circumstances" require their participation in these proceedings. *See* W. Va. Code § 48–9–103(b). *See also* Syl. pt. 4, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 ("In exceptional cases and subject to the court's discretion, a psychological parent may intervene in a custody proceeding brought pursuant to W. Va.Code § 48–9–103 (2001) (Repl. Vol. 2004) when such intervention is likely to serve the best interests of the child(ren) whose custody is under adjudication."). In Syllabus point 2 of *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138, we explained that

> [t]he reference to "exceptional cases" contained in W. Va.Code § 48–9–103(b) (2001) (Repl. Vol. 2004) signifies unusual or extraordinary cases, and, accordingly, a court should exercise its discretion to permit intervention in such unusual or extraordinary cases only when intervention is likely to serve the best interests of the subject child(ren).

This case, however, is not an "exceptional case" within the contemplation of this holding. In the *Clifford K.* case, we were faced with a situation in which a child's biological mother had died, the child's biological father played an insignificant role in the child's upbringing, and the mother's partner lived with the mother and the child as the child's second parent. That case presented unique circumstances under which according intervenor status to the mother's partner was quite reasonable and, in fact, was warranted by the facts of the case insofar as the child regarded the mother's partner as his second parent. The instant matter, however, does not present unique or extraordinary circumstances such that intervention was warranted. Senturi has two parents, Misty and Joshua; she resides with Misty and has visitation privileges with Joshua. Although Senturi also spends time with Christopher and Tanya, there have been no allegations that either of her biological parents are unfit to care for her or that there exist other circumstances to require the presence of intervenors to protect her best interests. Simply stated, this case is not an "exceptional case[ ]" as contemplated by W. Va.Code § 48–9–103(b), and the family court erred by ruling to the contrary.

Be that as it may, the family court proceeded to find that Christopher and Tanya are Senturi's psychological co-parents and accorded them intervenor status on this basis. *See* W. Va.Code § 48–9–103(b); Syl. pt. 4, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138. Again, however, the family court erred in applying the relevant law to the facts of this case because Christopher and Tanya do not meet the definition of a psychological parent.

> A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our prior decision of *In re Brandon L.E.*, 183 W.Va. 113, 394 S.E.2d 515 (1990), that case is expressly modified.

Syl. pt. 3, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138. In the cases in which this Court has determined a person to be a psychological parent to a child, that person typically has resided in the child's household and interacted with the child on a daily basis. *See, e.g., In re Clifford K., id.; In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996); *Simmons v. Comer*, 190 W.Va. 350, 438 S.E.2d 530 (1993); *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989). Moreover, a psychological parent is one who essentially serves as a second parent to a child and is a relationship to which the child's parent has consented. *See generally In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138; *Simmons*, 190 W.Va. 350, 438 S.E.2d 530; *Honaker*, 182 W.Va. 448, 388 S.E.2d 322.

 In the case *sub judice*, the record reflects that Christopher and Tanya have provided some level of care for Senturi since Christmas, 2004, and that some of the periods of care have lasted for more than one day. There is no indication, however, that Christopher and Tanya reside in the same household as Misty and Senturi or that they have daily interactions with the child such that they routinely serve as additional parents to Senturi. Furthermore, although Misty has consented to the formation of a relationship between Senturi and Christopher and Tanya, it is not apparent from the record that the relationship is so pervasive as to accord Christopher and Tanya the status of psychological co-parents as that concept is defined in *Clifford K.* Obviously, a child will hold in high esteem any person who looks after him/her, attends to his/her needs, and lavishes him/her with love, attention, and affection. However, simply caring for a child is not enough to bestow upon a care giver psychological parent status. Were this the law of the State, any person, from day care providers and babysitters to school teachers and family friends, who cares for a child on a regular basis and with whom the child has developed a relationship of trust could claim to be the child's psychological parent and seek an award of the child's custody to the exclusion of the child's parent. Clearly, this is not the result contemplated by this Court's prior holding, and the family court's extension of the concept of psychological parent to accord standing to Christopher and Tanya in this case was improper. Accordingly, we reverse the decision of the circuit court affirming this ruling by the family court.

 In closing, we would be remiss if we did not address the convoluted conflagration of events that has culminated in the instant appeal. From our first review of this case, we have been deeply troubled by the utter disregard for Misty's rights to the custody of her child. Misty first was deprived of her parental rights to her child when she followed the court-approved parenting plan to notify Joshua of her intent to relocate with Senturi to Texas. Upon complying with the notification requirement, Misty lost both the custody of her child and her right to visit with her child not to the child's father, but to Christopher and Tanya. No finding was made that Misty was unfit to have the custody of her daughter [12] as generally is required to effectuate a change in a child's custody. *See, e.g.,* Syl. pt. 2, *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977) (per curiam) ("To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child."). *See also* W. Va.Code §§ 48–9–401 (2001) (Repl. Vol. 2004), 48–9–402 (2001) (Repl. Vol. 2004) (discussing methods for modifying parenting plan).

This unsupported usurpation of Misty's custodial rights was compounded when the family court entered its temporary order to award Misty not the custody of her child but rather minimal visitation with her pending the court's issuance of its final order. By final order, the family court finally restored custody of Senturi to Misty,[13] although it required her to share parenting time with Christopher and Tanya, who the court found to be Senturi's psychological co-parents. Even under the parties' present arrangement, Misty does not have the exclusive care, custody, and control of her daughter. As a result of the " 'significant' parenting time" ordered by the family court and affirmed by

---

**12.** Prior to the ex parte petition for temporary emergency custody filed by Joshua, and joined by Christopher and Tanya, the only allegation that Misty was not fit to retain custody of Senturi was a referral to the child protective services division of the DHHR in October, 2005, accusing Misty of neglecting Senturi. These allegations charged child neglect, lack of supervision, lack of adequate physical care, and risk of neglect due to drug use. Although the DHHR conducted an investigation of these charges, the allegations could not be substantiated. Ultimately, the DHHR determined that Misty's continued care of Senturi posed a minimal to low risk of harm to the child, and, thus, continued Misty's custody of Senturi.

**13.** The family court did not address Misty's fitness to have the custody of her daughter in its final order, although it did note that Misty tested positive when she took a voluntary drug test. Moreover, no allegations have been made that Misty is unfit to retain custody of her two older children, and neither Joshua nor Christopher and Tanya have sought their custody or an award of visitation therewith in these proceedings.

the circuit court, Misty represents in her brief to this Court that

> [Christopher and Tanya] spend time with Senturi from approximately 8:30 a.m. Friday until 6:00 p.m. on Monday. Misty ... spends time with her daughter from Monday evening until Wednesday morning when [Christopher and Tanya] have the child. They then return the child on Wednesday evenings and Misty spends time with the child until Friday morning.

Under this schedule, Misty may be designated as Senturi's "primary residential parent," but Senturi appears to actually be spending more time per week with Christopher and Tanya, with whom she was not ordered to reside. Moreover, requiring Misty to acquiesce to visitations between Senturi and third-persons with whom her relationship has substantially deteriorated as a result of the instant litigation does not afford her the freedom to make decisions for her child inherent in the rights accorded to a custodial parent.

█ In light of the facts and circumstances presently before us, and the lower courts' complete and utter disregard of Misty's parental rights, we are compelled to reiterate the preeminent importance of a parent's right to the custody of his/her child. As we held in Syllabus point one of *Whiteman v. Robinson,* 145 W.Va. 685, 116 S.E.2d 691 (1960):

> A parent has the natural right to the custody of his or her infant child, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Therefore, we urge family and circuit courts to be ever vigilant when issuing rulings to protect the best interests of children to ensure that the rights of those children's parents are not unnecessarily trammeled in the process of administering justice.

## IV.

## CONCLUSION

For the foregoing reasons, the October 30, 2006, order of the Circuit Court of Cabell County is hereby reversed and Misty's full custodial rights to her daughter, Senturi, are hereby restored. The Clerk of this Court is directed to issue the mandate in this case forthwith.

Reversed.