# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.C.**

**No. 17-0362** (Webster County 16-JA-73)

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father B.C., by counsel Andrew Chattin, appeals the Circuit Court of Webster County's March 17, 2017, order enforcing a custody agreement with respect to his transfer of permanent legal custody of J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in enforcing the custody agreement at issue, thereby effectively terminating his parental rights to the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2016, the DHHR filed an abuse and neglect petition against petitioner. That same month, the DHHR filed an amended petition. According to the DHHR, petitioner previously executed a permanent custody agreement that granted the child's maternal grandparents permanent custody of the child. At the time of the petition's filing, petitioner had been incarcerated on multiple felonies for approximately two years. According to the DHHR, petitioner abandoned the child and failed to provide for her in any way. In fact, the custody agreement in question explicitly stated that petitioner would not "be obligated to provide for any support and maintenance" for the child. The notarized agreement additionally indicated that petitioner signed it willingly and free of fraud or duress. Moreover, the agreement indicated that it "shall be irrevocable . . . ." A few days after the filing of the initial petition, petitioner was released from incarceration.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In March of 2017, the circuit court held an adjudicatory hearing, after which it failed to find that petitioner abused or neglected the child. As such, the circuit court declined to adjudicate petitioner as an abusing parent.[2]

The circuit court held a dispositional hearing in January of 2017. During the hearing, the circuit court found that, although petitioner was incarcerated at the time he executed the relevant custody agreement, he had not yet been convicted. Accordingly, based on Rule 17 of the West Virginia Rules of Civil Procedure, petitioner was under no disability at the time of the agreement's execution. The circuit court also found that the agreement was clear upon its face that it transferred permanent legal custody of the child and was irrevocable. As such, the circuit court found that parol evidence as to petitioner's intent when signing the document was irrelevant. Further, the evidence established that the grandparents constituted the child's psychological parents because she had been in their care since shortly after her birth and recognized them as her parents. The circuit court went on to find that petitioner had "not provided any care, support or maintenance for [J.C.] since her birth." Based on these findings, the circuit court enforced the custody agreement in which petitioner transferred his custodial rights to the maternal grandparents and enjoined petitioner from having any contact with the child, unless such contact is authorized by a court.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]Despite the circuit court's lack of adjudication as to petitioner, it did not dismiss the petition again him because custody issues raised by his execution of the permanent custody agreement persisted. Instead, the circuit court retained jurisdiction over the child pursuant to Rule 6 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides that

> [t]he court retains exclusive jurisdiction over placement of the child while the case is pending, as well as over any subsequent requests for modification, including, but not limited to, changes in permanent placement or visitation, except that (1) if the petition is dismissed for failure to state a claim under Chapter 49 of the W. Va. Code, or (2) if the petition is dismissed, and the child is thereby ordered placed in the legal and physical custody of both of his/her cohabitating parents without any visitation or child support provisions, then any future child custody, visitation, and/or child support proceedings between the parents may be brought in family court.

Here, the proceedings continued against the mother until her rights to a child not at issue in this appeal were eventually terminated in the same order from which petitioner now appeals.

[3]The mother's custodial rights were also transferred to the grandparents by enforcement of their custody agreement. According to the parties, the permanency plan is for the child to remain in the legal custody of the grandparents, per the terms of the custody agreement.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner simply disagrees with the circuit court's enforcement of the custody agreement at issue, based on allegations that he did not understand the terms of the agreement or that it was permanent. He further argues that he signed the document under duress, given the fact that he believed he would soon be sentenced to a lengthy term of incarceration, and that the child's mother informed him that the agreement was only temporary. According to petitioner's testimony, he did not intend to transfer permanent legal custody of the child when he executed the document in question. Upon our review, however, we do not find these arguments compelling.

The circuit court was correct in enforcing the agreement at issue, as petitioner provided no evidence, beyond his own self-serving assertions, that he did not understand the terms of the agreement. While petitioner argues that he was confused by certain legal terminology in the agreement, the fact remains that it plainly stated on its face that the transfer of custody was to be permanent in nature. In fact, the document clearly indicated that petitioner "believe[d] that it is in the best interest of the child to transfer the physical care, custody, and control of [J.C.] unto [the maternal grandparents] on a permanent basis." Moreover, the document indicated that petitioner entered into it of his "own free will, that the consent was not obtained through fraud or duress," and that his "free[] and voluntary execut[ion]" of the document was in the child's best interests.

In addressing a circuit court's interpretation of a written agreement, we have held as follows:

"While the general rule is that the construction of a writing is for the court; yet where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently."

Syl. Pt. 1, in part, *Buckhannon Sales Co., Inc. v. Appalantic Corp.*, 175 W.Va. 742, 338 S.E.2d 222 (1985). Here, the agreement in question was not ambiguous. Instead, it clearly set forth the terms and conditions surrounding petitioner's transfer of custody to the grandparents, including multiple references to the permanent nature of the transfer and the irrevocability of the agreement. As such, we find no error in the circuit court's finding that "parol[] evidence . . . to [petitioner's] intent when signing the agreement is not relevant because the document is clear upon its face." Further, we have held that

> "[i]f a natural parent intends to voluntarily transfer permanent custody of a child to a third person, then the document effecting that transfer should expressly provide that it is the intention of the parent to permanently transfer the custody of the child to the third person." Syllabus point 4, *Overfield v. Collins*, 199 W.Va. 27, 483 S.E.2d 27 (1996).

Syl. Pt. 4, *In re Visitation and Custody of Senturi N.S.V.*, 221 W.Va. 159, 652 S.E.2d 490 (2007). As set forth above, the agreement in question expressly provided that petitioner intended to transfer permanent custody of the child to the grandparents. As such, we find no error in the circuit court's decision to enforce the agreement at issue.[4]

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 17, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: October 23, 2017

---

[4]In making its determination, the circuit court relied, in part, upon Rule 17(c) of the West Virginia Rules of Civil Procedure to determine that petitioner did not have a disability that prevented him from entering into the agreement because he had not been convicted of a crime at the time of the agreement's execution. Contrary to the circuit court's ruling, Rule 81(a)(7) clearly states that "Rules 5(b), 5(e) and 80 apply, but the other rules do not apply, to juvenile proceedings brought under the provisions of chapter 49 . . . of the West Virginia Code." As such, Rule 17(c) is not applicable to the current action. However, we decline to find that petitioner's incarceration prior to conviction constituted sufficient evidence of duress such that the custody agreement in question should not have been enforced. This Court has held, in the context of voluntarily relinquishments of parental rights to children, that incarceration alone does not constitute sufficient duress to set aside a voluntary relinquishment. *See In re: Cesar L.*, 221 W.Va. 249, 261-62, 654 S.E.2d 373, 385-86 (2007) (stating that incarceration alone, which removed parent's ability to care for child, was a "[m]ere 'duress of circumstance'" that did not constitute duress to set aside voluntary relinquishment.) (citations omitted).

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker